CAROLINE M. BURRITT *vs.* THE CITY OF NEW HAVEN AND THE NEW HAVEN & NORTHAMPTON COMPANY.

The charter of a railroad company required it, upon crossing any highway, to restore it to its former state, or in a sufficient manner not to impair its usefulness. It also provided that it should "construct and use that part of its road within the city of *N* subject to such regulations as the common council of the city should prescribe." The charter of the city provided that the common council of the city should "have supervision over all bridges crossing railroads within the city, and might from time to time order the widening and repairing of the same in such manner as in their judgment the public convenience might require." The railroad company had, in the year 1848, constructed its road, crossing a highway in the outer part of the city of *N*, and had restored the highway by making a crossing at the grade of the road. In 1869 the city had so much extended and the travel over this highway so much increased, as to make it necessary to the public convenience that a bridge should be built over the railroad at the crossing, and the common council of the city made an order that one should be built by the railroad company. The company failing to build it, the common council authorized the road commissioners of the city to make a contract with the railroad company that if the company would build the bridge the city would construct the necessary embankments for approaching it; and under this agreement the railroad company built the bridge and the city made the embankments. These embankments raised the street so much in front of the house and lot of the plaintiff as to damage the property seriously. Held 1. That the city was not liable for the damage. 2. That the railroad company was liable. (One judge dissenting.)

The city would not be liable because the only duty resting upon it with regard to highways was imposed by the legislature and was limited to the making of highways and maintaining them in a condition safe and convenient for the public use, while here the structure was made necessary only by the fact of the railroad crossing the highway. The necessity grew properly out of the existence of the railroad and not out of the demands of public travel.

Besides this, the whole duty of the city in the matter of highways was of a public and governmental character, which carried with it an immunity from liability for damages done in the reasonable performance of the duty.

And the common council had no power to bind the city by such a contract as that made with the railroad company, without authority expressly conferred upon it by the city, even if it would have had with authority so conferred.

Where no duty devolves upon a city in such a matter, none can be legally assumed.

The injury to the plaintiff's property did not constitute a taking of land within the meaning of the constitution of the state and of the charter of the railroad company; but, under the provision in the latter for the payment of all damages that might be caused, the plaintiff was entitled to compensation.

The duty of the railroad company under its charter to restore a highway to its former usefulness, was not discharged when it restored it to a proper condition at the time the railroad was constructed; but the duty was a continuing one, and embraced such alterations and improvements as should afterwards be made necessary by the growth of the city and the increased travel.

And it does not alter the case that the public convenience required the making of the bridge and embankments. It was the public convenience that was to be subserved in the first instance by the restoration of the highway to its former usefulness, and the present was merely an enlargement of its former demands.

The embankments at the ends of a bridge, made necessary in restoring a highway to its former usefulness, are a part of the railroad structure authorized by the charter of the railroad company, and a party incidentally injured in their construction has as perfect a remedy against the company for consequential damages, as for a direct injury by it in the original construction of the road.

In ordering a bridge to be constructed the common council were to be understood as ordering the necessary approaches to it to be made.

If the common council, under the provision of the city charter authorizing it to supervise all bridges over railroad crossings and to order the widening and repairing of them, had not power to order the construction of a bridge, the railroad company would yet be liable, under the provision of its own charter that it should restore all highways to their former usefulness and should construct and use its road within the city of *N* subject to the direction of the common council.

The charters of corporations which confer exclusive privileges for the particular advantage of the grantees, are to be construed liberally for the benefit of the public and strictly as against the corporations.

TRESPASS ON THE CASE, brought to the Superior Court in New Haven County. The principal count in the declaration was as follows :—

That heretofore, to wit, on the first day of May, 1870, the plaintiff was and ever since has been lawfully seized and possessed of a certain lot of land on Prospect street in said

city of New Haven, [describing it,] with a dwelling house thereon standing, in which the plaintiff lived, and that the defendants afterwards, to wit, on August 1st, 1871, and on divers other days between said day and the date of this writ, and while she still owned said property, as she still does, wrongfully and injuriously raised, in said Prospect street, along, opposite to, and near the front of said house, an embankment of stone, earth and other materials, of much greater height than that of the former grade of said street, and certain high stone piers and abutments and other stone and woodwork, in said street, at the same place, opposite to said lot; all of which said erections are and were so near the plaintiff's lot and house, and elevated the surface of said street so high, to wit, fifteen feet, above its former and established grade, in conformity to which her said house had been built, that ever since the plaintiff, and all persons having occasion to enter upon her said house lot, have by said erections been obstructed and hindered from entering upon said lot from said street, as they were before accustomed to do; and her said house was made dark, damp, unhealthy and uninhabitable; whereby the plaintiff has been compelled to raise said house many, to wit, ten feet higher than its former elevation, and to build new foundations therefor, and to fill in around said house with stone and earth, and has thereby expended a large sum, to wit, three thousand dollars; and whereby her said lot has been greatly depreciated in value; to her damage to the amount of five thousand dollars.

The defendants, the City of New Haven and the New Haven & Northampton Company, a railroad corporation, pleaded severally a general denial and put themselves on the court for trial. The court found the following facts:—

The plaintiff owns the house and lot described in her declaration, and has owned it and resided therein for many years. The house was built in 1864, conformably to the then existing grade of Prospect street, which is and then was a public street in the city of New Haven, under the care of the city, and which is crossed by the railroad of the New Haven & Northampton Company, at a point immediately

below the plaintiff's lot. The railway crossing was and always had been at grade, and so continued until the building of the bridge hereinafter mentioned.

On the 14th of May, 1869, the following order was passed by the common council of the city, in reference to the railway crossing at said street:—

"It appearing that the public necessity and convenience require that Prospect street should be covered by a bridge over that part of said street used and occupied by the New Haven & Northampton Company, *it is hereby ordered* that the said New Haven & Northampton Company restore said Prospect street to a safe and convenient condition for the public use, by erecting and maintaining a suitable bridge, with sufficient sidewalks on each side of the roadway of said bridge, over the track and road-bed of said company in said street, within the period of six months from the date hereof, to the acceptance of the board of road commissioners."

The railroad company did not comply with this order, claiming that they were under no obligation to do so.

On the 7th of May, 1870, the following order was passed by the common council:

"*Resolved,* That the board of road commissioners be, and they are hereby authorized and directed to contract with the New Haven & Northampton Company for the construction of a suitable bridge over the railway of said company, at its intersection with Prospect street; the company to construct said bridge at its own exclusive cost and expense, and the city to assume the grading of the street up to said bridge upon either side."

In pursuance of this resolution the following contract was entered into by the railroad company and the board of road commissioners, on July 14th, 1870:

"Memorandum of an agreement made this 14th day of July, 1870, by and between the New Haven & Northampton Company, acting herein by their vice-president, and duly authorized agent, and the City of New Haven, acting herein by the board of road commissioners of said city, who are thereto duly authorized:

"*First.* The said New Haven & Northampton Company, in consideration of the agreement of said city hereinafter set forth, agrees to erect, and at its own exclusive cost maintain, a substantial and suitable bridge, sixty feet in width, including suitable sidewalks on each side thereof, over the intersection of their railroad with Prospect street in said city. Said bridge is to be either of wood or iron, at the election of said company, and to have stone abutments, and to be in all respects well and thoroughly built, and to be completed on or before the 1st day of January, 1871.

"*Second.* In consideration of the premises, the said city agrees to construct, grade, and maintain, at its own exclusive cost, the roadway approaches to said bridge, upon either side thereof."

By an endorsement subsequently made upon the contract, by the same parties, in December, 1870, the time for the completion of the bridge was extended to June 1st, 1871.

In order to facilitate work under this contract Prospect street was closed to public travel by order of the city, in the spring of 1871, between Grove and Lock streets, and remained closed for about sixteen months, during which period a bridge was constructed by the railroad company, as agreed, and the approaches were filled in and graded by the city. Prior to April 18th, 1872, nothing was done by the city in the way of grading the approaches, except to permit the dumping of ashes and rubbish in the street, considerable quantities of which were so dumped near the abutments of the bridge, and opposite the plaintiff's lot. On that day the following order was passed by the common council:—

"*Ordered,* That the board of road commissioners proceed immediately to complete the grading of Prospect street, upon the northerly side of the bridge recently erected over the railroad of the New Haven & Northampton Company, by grading up the approaches to the northerly abutment of said bridge." This order was complied with during the summer.

The first floor of the plaintiff's house was four feet above the old grade of the street, but was eleven feet below the new grade, caused by the filling necessary to make suit-

able approaches to the bridge; in consequence of which her basement was flooded by the wash of the ordinary surface drainage from the street, and she was obliged to raise her house and fill in around it, at large expense, and has been otherwise damaged. No filling in was done by the city upon her land, except such part of it as is included within the limits of Prospect street. The height of the bridge over the track of the company was fixed by the general railroad commissioners, after a full hearing of the city upon the matter and an inspection of the place in question.

On January 14th, 1873, the common council passed an order directing the board of compensation, organized under a provision of the city charter, to assess all damages and benefits accruing to all parties interested, by the "filling in the approaches to the railroad bridge on Prospect street." The board of compensation gave due notice of their meeting for this purpose, to all parties owning land on Prospect street in the vicinity of the bridge, and after hearing the same, reported on August 15th, 1873, to the common council, that they awarded that the city should pay to the plaintiff, in full of all damages, over and above all benefits accruing to her by reason of the filling in of said approaches, two thousand dollars. Damages were also assessed in favor of other proprietors to the additional amount of $4,182.50, and benefits were assessed against certain others to the amount of $3,466.25. This report was accepted by both branches of the common council, in October, 1873, and an order passed making the assessments in accordance therewith; but the mayor returned the order with his disapproval, and it was thereupon reconsidered and rejected by both branches of the common council.

The New Haven and Northampton Company in its creation succeeded to "The President, Directors and Company of the Farmington Canal," the charter of which company was granted in 1822. The 9th section of that charter contained the following provision: "Said corporation shall build and keep in good repair suitable and convenient bridges over said canal in all places where said canal shall cross any public highway or road."

The 11th section of the charter of the New Haven & Northampton Company, granted in 1836, provided as follows: "The company hereby created, from and after the organization thereof and the conveyance of the franchises of the President, Directors and Company of the Farmington Canal, shall be held to construct and maintain bridges, with suitable abutments and embankments at the same, keep the same and also the canal in repair, and be subject to all future damages and liabilities in the same manner and to the same extent as the said company would have been liable had no such conveyance been made."

By an amendment of the charter of the New Haven & Northampton Company passed in 1846, the company were authorized to build a railroad from New Haven to the north line of the state, along or near the line of the Farmington Canal; and it was therein provided as follows:

SEC. 1.  "That all damages that may be occasioned to any person or corporation by the taking of any such land or materials aforesaid, for the purposes aforesaid, shall be paid for by said company in manner hereinafter provided."

SEC. 3.  "And it shall be lawful for said company to enter upon and use all such lands and real estate as may be necessary for them in the manner and for the purposes set forth in the first section hereof.  And said company shall be holden to pay all damages that may arise to any person or persons. And if the person or persons to whom damage may so arise cannot agree as to the amount of such damage, it shall be the duty of said company to apply to the Superior Court, &c. And thereupon said Superior Court shall appoint three disinterested and judicious freeholders to assess the amount of such damages."

SEC. 5.  "Provided, that said company shall construct and use that part of said road within the limits of the city of New Haven in such manner and subject to such rules and regulations as the common council of said city shall prescribe."

SEC. 6.  "That whenever it shall be necessary for the construction of their railroad       *       *       to intersect any highway,       *       *       it shall be lawful for said company

to construct said railroad upon or across the same, but the said company shall restore the highway thus intersected to its former state, or in a sufficient manner not to impair its usefulness."

A further amendment of the charter passed in 1848 provided as follows:

SEC. 2.   "It shall be lawful for said company to discontinue their canal in the city of New Haven, and to make or construct their railroad or way upon the bed of said canal, including the towing path and berm bank, as the same is now located by the commissioners on said road, which location of said road and the proceedings thereunder; and the authority hereby conferred,. shall be valid and effectual in the same manner and to the same extent as if such authority had been conferred by the aforesaid act of 1846 ; and in regard to the construction and use of said road or way, said company can exercise and enjoy all the rights, powers and privileges, and shall be subject to all the liabilities and restrictions, contained in and conferred by said act of 1846."

In erecting the abutments for the bridge, the railroad company placed no part thereof on any portion of Prospect street, the fee in which, subject to the public easement, was in the plaintiff.

The damages to which the plaintiff was entitled, if entitled to recover against either of the defendants, were assessed at two thousand dollars.

Upon the foregoing facts, the question whether the plaintiff was entitled to recover against the defendants, or either of them, for such damages, was reserved for the advice of this court.

*Baldwin* and *Alling*, for the plaintiff.

1.   We contend that the city of New Haven is liable.   If its action was in the exercise, not of a special privilege, but of a governmental power to alter or repair highways, we admit that there is *primâ facie* no remedy, unless the charter gives it, for ordinary damages suffered by abutting proprietors. If, however, extraordinary changes of grade are made in an

existing highway, working peculiar injury to the abutters, there are authorities which hold that they can recover. *Louisville* v. *Rolling Mill Co.*, 3 Bush, 416; *Mears* v. *Commissioners of Wilmington*, 9 Ired. Law, 73. Contrary decisions in other states are in part founded on their local law, giving the public the fee in highways. *Radcliff's Exr.* v. *Mayor, &c., of Brooklyn*, 4 N. York, 195. But we contend that the part taken by the city in building this bridge, was not an exercise of its *governmental* functions. The ordinance, though on a subject within its corporate powers, authorizes a private contract, rather than imposes a public duty. The city promises to assist in building the bridge in consideration that the railroad will do a certain part of the work in a certain way, just as in *Townsend* v. *Hoyle*, 20 Conn., 1, the city agreed to open a street in consideration that the defendants would pay part of the land damages. In this view of the case the city would be answerable for the consequences of its acts, in trespass or case at common law, like any private individual. The railroad company was bound by its charter to restore Prospect street to its former state of usefulness. If it restored it, in 1849, to a sufficient condition of usefulness, this did not relieve it from the duty of restoring it by further acts, whenever the growth of the city might require it. *English* v. *New Haven & Northampton Co.*, 32 Conn., 240, 245. If, now, the city, instead of exercising this power which the state had confided to it, of requiring the railroad company to build this bridge, and enforcing the order of May 14th, 1869, saw fit to make a private bargain with the company, on an equal footing, it thus abdicated its position as a depositary of a part of the governing power of the state, and ceased to have the immunities that attached to it in such a character. The two parties to the bridge contract, thus viewed, stand before the law like any individuals, bargaining for their mutual advantage to do an act which must injure another; and in doing the act they are co-tortfeasors. The bridge and its immediate approaches constitute together but one structure, either part of which is useless without the other. Whatever therefore was done by either party under the contract was done by both. Had the

railroad company built the approaches to the bridge on the soil of Prospect street, without any arrangement with the city, its charter would subject it to an action by the plaintiff for all damages thereby occasioned to her, although the structure were necessary in order to restore the street to its proper condition of usefulness. *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 309; *Nicholson* v. *N. York & N. Haven R. R. Co.*, 22 id., 74; *Fletcher* v. *Auburn & Syracuse R. R. Co.*, 25 Wend., 462. Knowing that such liability would exist, the railroad company refused to obey the order of May 14th, 1869, and procured the execution of the contract by which the city agreed to build the approaches, and relieve the company from the necessity of trespassing directly upon the plaintiff's land. But it would be a reproach to the law to allow such a contrivance to succeed in depriving the plaintiff, who is in precisely the same situation with Bradley and Nicholson in the cases cited, of the compensation to which they were adjudged to be entitled. Either the city built the approaches on its own responsibility, or as the agent of the railroad company, or as a co-tortfeasor with it; and in any case it must bear the responsibility it has assumed.

2. The liability of the railroad company. The railroad company, as we have seen, was bound by its charter to restore Prospect street to its former state of usefulness; and a restoration that was sufficient in 1849 did not relieve it from the duty of restoring it by further acts, whenever the growth of the city, and increased travel on the street, might require it. *English* v. *New Haven & Northampton Company*, 32 Conn., 240, 245. The duty of thus restoring the street, (by bridging it, if necessary,) was one which the law provided two modes of enforcing. Sec. 33 of the city charter, in force when the contract was made, provides that "the common council shall have supervision of all bridges crossing railroads in said city, and may, from time to time, order the building, widening or repairing of such bridges, in such manner and within such times as in their judgment public convenience may require; and in case any railroad company, whose road such bridge crosses, shall neglect to obey such

order, said common council may cause the required building, widening or repairing to be executed at the expense of said city, and the treasurer of said city may then collect the amount of such expense in an action of trespass on the case, in his own name, against such delinquent company." Another act of the same year, provides that " when any railroad company shall neglect to construct any highway or bridge, which it is its duty to construct, or to keep in repair any bridge, embankment, filling or abutment, which it is its duty to maintain, the state's attorney in any county wherein such neglect exists, or in which the whole or any part of said highway or bridge is situated, shall make complaint thereof to the Superior Court for such county, which shall proceed in the same manner against said company as is required against towns neglecting to construct any road laid out by the Superior Court, or to keep in repair any public road within their limits, which it is their duty to construct or keep in repair." By these two acts, the state provided two agents of the law, the city, and the state's attorney, with power to compel this railroad company to build necessary bridges over highways in New Haven. The city, however, not acting as such an agent of the law, but as a mere corporation, saw fit to make with this company a private bargain for the joint construction of the bridge in question. How does this put the city in any different position, as to the plaintiff, from that which the state's attorney would have occupied, had he, instead of bringing his information, made a similar contract? That the bridge in question was necessary to accommodate public travel must be assumed from the action taken in the matter by both the defendants. Being a necessity, it was clearly the duty, as we have seen, of the company to build it, with the necessary approaches, and consequently to answer all damages thereby occasioned to abutters. *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 309; *Nicholson* v. *N. York & N. Haven R. R. Co.*, 22 id., 74; *Parker* v. *Boston & Maine R. R. Co.*, 3 Cush., 107, 116; *Fletcher* v. *Auburn & Syracuse R. R. Co.*, 25 Wend., 462. This latter responsibility, as against the plain-

tiff, cannot be evaded by its having procured the city to build the approaches. *Gardiner* v. *Boston & Worcester R. R. Co.*, 9 Cush., 1, 4. Suppose that a private individual wishes to carry a private way for his own convenience across and under a highway by means of a bridge, and. the town agrees to build the approaches if he builds the bridge. Does it tend to exonerate him from responsibility for the consequent damages to abutters, that he procured the town to do part of the work? We submit that in such a case, as in the present, it is entirely immaterial as regards third persons whether the party for whose benefit the bridge is built does the entire work himself or procures part to be done by an agent, be this agent a public corporation or a private individual. Whether the railroad company built the approaches to the bridge by the city as its agent, or jointly with the city, is unimportant in the present action, as in either case they would be co-tortfeasors as regards the plaintiff. *City of Indianapolis* v. *Lawyer*, 38 Ind., 347, 370.

*Bronson*, for the City of New Haven.

1. The charter of the New Haven & Northampton Company contains the usual clause about the restoration of highways to their former state, " or in sufficient manner not to impair their usefulness," and further requires the company to construct and use that part of their railroad within the city of New Haven in such manner, and subject to such rules and regulations, as the common council shall prescribe. No question is made but that the railroad company, at the time the railway was constructed, did restore the highway to its former usefulness. Under the provisions of their charter, taken in connection with the charter of the canal company, it has been held that the railroad company was bound to build bridges where required. *English* v. *New Haven & Northampton Co.*, 32 Conn., 240. The general statute has reference only to railroads located and constructed after the passage of the act. This road was built before. In 1857 the charter of the city of New Haven was passed, and this charter was in existence when the order of the common council was passed, May 14th,

1869.   Under it the city had power to order " *the widening and repairing* " of existing bridges, but none to order *new bridges built.*   It was the agent of the law in the former case, but not in the latter.   The new charter took effect the first day of June, 1870.   New powers were given to the city. Before that time there was a duty devolving upon the railroad, but the city was not the agent to enforce that duty. Under the latter charter additional power was conferred upon the city to order *new* bridges.   It will thus be seen that there was a duty incumbent on the railroad to *build bridges* at the time of the order of the city, but no authority on the city to *command* until June 1, 1870, before which time power had been given to the road commissioners to make a contract.

2.   We are next to inquire whether the duty of the railroad to build, and the city to order, included " approaches." That the power of the city to *order* did not include approaches, seems to be fully settled by our courts.   *City of New Haven* v. *N. York & N. Haven R. R. Co.*, 39 Conn., 128.   In the charter of the New Haven & Northampton Company, the word " bridge " alone is used.   The same word was used in the statutes until 1857, when the term " approach " was first used.   This would seem to indicate that in the judgment of the legislature it added a new meaning to the word " bridge."   The whole policy of our government is opposed to transferring the control of any portion of the highway from the municipality to the railroad company.   The ruling of the court in the case just cited would also indicate their opinion that the railroad companies are not liable to build approaches.   If the city has no power to *order*, it would seem that the court should not put the *duty of building* upon the railroad company by *construction.*   The true rule, as applicable to the city of New Haven, would seem to be, that where a railroad is being constructed, and in order to restore a highway to its former usefulness a bridge is built, with abutments and approaches, by the railroad company, the approaches are a part of the bridge.   But that where there is by law a duty on a railroad company to build and maintain necessary bridges, then the bridge proper, with perhaps the abutments, is the

only burden upon the company. If this is the true rule, then it was the duty of the city to keep in repair the highway opposite the plaintiff's land, and grade it with reference to the bridge. And if so, the city can not be liable in this action.

3. If, however, we assume that the railroad company is liable to build both bridge and approaches, and so liable for damage that might be inflicted by grading, then we say that the city is not liable to the plaintiff. The railroad company and the city made a contract; under this contract the city did this grading. If the city built the approaches upon its own responsibility, without authority of the railroad company and not as its agent, and if they had no power in themselves to do the grading, then this contract was *ultra vires*, and the corporation itself not responsible for the act. A corporation can never be responsible for the tortious acts of its agents, when the work itself is unauthorized by its charter. It is clear that if this approach belonged to the railroad to build, then the city had no power of itself to do the work. The contract was void, the work unauthorized, and the remedy of the plaintiff must be against the actors and not the city. 2 Dillon Municp. Corp., § 766, and cases there cited. But if the city did the act as the agent of the railroad company, or (considering the bridge and approach as one thing) as jointly with the railroad, then the city is not liable. It was still *ultra vires*. Again, what it was doing was not a tortious act; it had the sanction of law; it was required by law to be done. The railroad company was compelled by law to pay the damage. The plaintiff then, in this aspect of the case, would have a remedy against the railroad company for all damage, and not against its agents; because this is the remedy appointed by law, and no other.

4. If we assume that the railroad company had nothing to do with the approaches, and that the duty of building the same belonged by law to the city, then there is no liability on its part. If it was done as an exercise of its governmental functions, it is admitted that the plaintiff has no claim. It is however said, that the powers of the city are a special

privilege conferred upon it, and, if exercised to the prejudice of any one, render the city liable for damage. A careful examination, however, of the city charter, will disclose no instance where the city is held liable to pay damage, except upon the taking of land. In the cases of *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 310, and *Nicholson* v. *The same*, 22 Conn., 74, the defendants were held liable because their charter distinctly imposed upon them such liability. The court expressly distinguished a railroad corporation from a municipality, holding that while the railroad companies were exercising a special privilege, they must comply with their charter and pay all damage. A municipal corporation, however, in grading a highway, stands upon entirely different ground. They are performing the work, not for personal interest, but for the whole interest of the public.

*J. S. Beach,* for the New Haven & Northampton Company.

The railroad company are not liable for any injury or damage done to the premises of the plaintiff by the acts of the city in raising the grade of the street in front of her premises.

1. It is conceded on the one hand by the plaintiff, that the railroad company have not themselves done any act directly causing any immediate injury to the plaintiff. No part of the filling in was done by them. And on the other hand, it is conceded by the company, that such filling in became necessary, by reason of the erection by them upon their own land of the abutments for a bridge over their railroad. The division of construction between the company and city was by contract, the former agreeing to assume the exclusive expense of erecting and maintaining the bridge, and the latter the exclusive expense of constructing, grading and maintaining the approaches to the bridge. If this was a lawful contract, imposing upon the city no obligation other than that which the law imposed upon it, the rights and remedies of the plaintiff—whatever they may be—are restricted to rights and remedies against the city, and cannot be so expanded as to reach the railroad company.

2.   It is claimed by the plaintiff that under this contract the city assumed upon itself duties and burdens which by law belonged to, and rested upon, the railroad company, and that such a contract—whatever may be its effect as between the parties to it—is of no validity to deprive the plaintiff of any rights or remedies she would have had, either against the city or the company, in the absence of such a contract. But the duty and burden of raising the grade of the highway in front of the plaintiff's premises was not a duty belonging to, or a burden resting upon, the railroad company. This duty, if it exists, must either originate in the charter of the railroad company, or it must be a duty which could legally be imposed by the city upon the company. The duty did not originate in the charter of the company. We accept the law as laid down in *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 110 ; the defendants being held liable for consequential damage to the plaintiff, where the raising of the bridge was necessary in order to allow of the passing of the engines and cars on the railroad, and the making of the embankment was necessary in consequence of the raising of the bridge, in order to restore the highway *to its former usefulness*, which it was made the duty of the defendants to do ; and both were raised *for the sole benefit and accommodation of the defendants, and not of the public.* The controlling distinction between the cases of which this one is the type and the case at bar, is that in those cases the grade of the highway was raised for the sole benefit and accommodation of the railroad company, and in this case it was raised because "public necessity and convenience" required it. It is claimed by the plaintiff that the duty of the company to raise the grade of the highway in front of her premises is found in that clause of their charter, (identical in this respect with the charters construed in the cases of which *Bradley* v. *N. York & N. Haven R. R. Co.* is the type,) compelling them, in intersecting a highway, to restore it to its former state, or in a sufficient manner not to impair its usefulness. And *Hamden* v. *N. Haven & Northampton Co.*, 27 Conn., 158, is quoted as authority for the proposition, that if the

company failed to do this in 1848, when their track was laid, the obligation remained in 1872, when the bridge was built. The conclusive answer to this claim is, that there is no suggestion, founded either in fact or upon the record, that the company failed, in 1848, to restore this highway, (as in the case referred to it was found they did fail,) to its then former state of usefulness. During the quarter of a century intervening since the track of this road was laid in 1848, the growth of the city has been such that in 1872 the public convenience required a further expenditure of money at this point. For what purpose? Not to restore this country road (in 1848 it was little else) to its former state, but to impart to (what in 1872 had become) a beautiful avenue, new and increased usefulness, for the general benefit of the public at large, and the special benefit of those whose wealth had adorned it with costly residences.

3. It is further claimed by the plaintiff, that this duty of restoring the highway is not to be measured by its existing condition and surroundings when the railroad was constructed, but that it is a continuing and accumulating duty, the measure of which expands with the expanding growth of the city and the increasing demands of public convenience. It is not understood that this is claimed as a general proposition, but as a peculiar proposition applicable to this defendant company under the authority of *English* v. *N. Haven & Northampton Co.*, 32 Conn., 240. That case involved the obligation of the company to widen an existing bridge under an order to that effect from the common council of the city of New Haven. The simple question submitted and argued was the constitutional right of the legislature to delegate its supervisory powers to the common council. The court having decided and disposed of that question, Judge BUTLER adds *obiter:* "But, thirdly, the obligation to widen this bridge whenever public necessity and convenience required it, did not rest upon the city, but was in fact imposed as a condition of their charter upon the defendants. The several acts which constitute that charter contain express provisions which require the corporations created by it to bridge the excavations they might make:

through the streets of the city. Reading these provisions in the light of surrounding circumstances and in view of the policy of the legislature to charge such corporations with the duty of restoring highways, when disturbed, to their former state of usefulness, we think it entirely clear that they intended to provide that the highway in question should be so restored whenever and to whatever extent the growth of the city and the wants of the public might require, and as a continuing duty." However well founded these suggestions may have been as applicable to the duty of widening a bridge over an excavation made under the authority of a corporation to whose rights the defendants had succeeded, they can have no application to this case, involving as it does the erection of a new structure over a grade crossing. And perhaps even in that case, as no such point was made or argued by counsel, the court did not enough discriminate between the rights and obligations of the New Haven & Northampton Company under their *canal* and under their *railroad* charter. It was made the duty of the *Farmington Canal Company* "to build and keep in good repair suitable and convenient bridges in all places where said canal shall cross any public highway or road." "The New Haven & Northampton Company," as organized in 1836, were empowered to receive a conveyance of the chartered rights of the Farmington Canal Company, and by their charter they were to keep the canal in repair "and to construct and maintain bridges." The intersection of a *canal* with a highway of course would involve the necessity of a bridge. When in 1846 and 1848 the New Haven & Northampton Company were empowered to construct a *railroad*, and to discontinue the canal, they were no longer required to erect or maintain bridges at the intersection of their railroad with highways, but the legislature conferred upon them the same powers, subject to the same obligations, as upon other railroad companies. Thus, section 6 of their charter provides as follows: "Wherever it shall be necessary for the construction of their railroad to intersect any highway, it shall be lawful for said company to construct said railroad *upon or across the same*, but the said company shall restore the high-

way thus intersected to its former state or in a sufficient manner not to impair its usefulness." We submit therefore that there was no duty resting upon the railroad company, originating in their charter, to construct this bridge in 1872, unless it is to be found in the section just quoted, imposing the duty of restoring the intersected highway, (in a sufficient manner not to impair its usefulness,) to its former state in 1848, and that this duty was discharged when the road was built.

4. At the time the contract, the validity of which is questioned, was made, the city of New Haven had no power to impose upon the railroad company the burden of raising the highway in front of the plaintiff's premises. The resolution authorizing the contract was passed by the common council on the 7th of May, 1870. The only power then existing in the city relating to this subject was contained in section 38 of its then charter. That section is as follows: " Said court of common council shall have supervision over all bridges crossing railroads in said city, and may from time to time order the widening or repairing of said bridges, in such manner and within such times as in their judgment public convenience may require; and in case any company, whose road such bridge crosses, shall neglect to obey such order, said common council may cause the required widening and repairing to be executed at the expense of the said city, and the treasurer of said city may then collect the amount of such expense in an action of trespass on the case in his own name against such delinquent company." The power to order the widening and repairing of bridges, it was conceded, conferred no authority to order the erection of a new structure, and this concession resulted in the contract between the city and the company. If it should be assumed that the common council had the power to make and enforce their order of May 14, 1870, and upon disobedience of that order by the company, had erected the bridge and built its approaches, the plaintiff would have had no cause of action against the railroad company. The city could only receive from the company the expenses of the construction of the " bridge proper;" the expense of making, and the damages caused by the approaches,

would be borne by the corporation, which under its charter is charged with the duty of "grading, altering and making highways," and of "constructing bridges or walks," "whenever or wheresoever in the opinion of the court of common council the public good shall so require." *City of New Haven* v. *N. York & N. Haven R. R. Co.*, 39 Conn., 120. It was for the public good and not for the benefit of the railroad company that the grade of this highway was raised. If the law be not so, that the plaintiff as one of that public must bear the consequent injury to her property without compensation, we submit that she cannot obtain remedy for her grievance from us, who neither caused it nor gained by it.

PHELPS, J.   This action is brought against both the city of New Haven and the New Haven & Northampton Company, to recover damages for an injury to the plaintiff occasioned by the erection of a bridge at the railroad crossing over Prospect street in said city, and of an embankment or approach leading to the bridge ; and the question whether the plaintiff is entitled to recover against both or either of the defendants, and if against either, which, is reserved by the Superior Court for the advice of this court.

By the provisions of its charter passed in 1846 the New Haven & Northampton Company in the construction of its railroad was authorized to intersect and cross when necessary any road or highway, subject to the obligation to "restore the same to its former state, or in a sufficient manner not to impair its usefulness." It was also required to "construct and use that part of its railroad within the limits of the city of New Haven in such manner and subject to such rules and regulations as the common council of the city should prescribe."

The General Assembly in 1857 passed an act relative to the charter of said city, by the 38th section of which it was provided that the court of common council should have supervision over all bridges crossing railroads in said city, and, might from time to time order the widening and repairing of the same in such manner and within such times as in their

judgment public convenience might require, and the manner of enforcing any order of the court of common council against any railroad company which refused to comply with such order as should be made, is specified. This act remained in force until it was superseded by a new charter which went into effect on the 1st of June, 1870, by the 33d section of which the 38th section of the former charter was re-enacted, with the addition that the power of the court of common council was extended to the building, as well as to the widening and repairing of such bridges.

On May 14th, 1869, the court of common council passed the following preamble and order:—" It appearing to the court of common council of the city of New Haven that the public necessity and convenience require that Prospect street should be crossed by a bridge over that part used and occupied by the New Haven & Northampton Company, it is therefore hereby ordered that the said New Haven & Northampton Company restore said Prospect street to a safe and convenient condition for the public use, by making and maintaining a suitable bridge with sufficient sidewalks on each side of the roadway of said bridge over the track and road-bed of said railroad company in said street, within the period of six months from the date hereof, to the acceptance of the board of road commissioners."

The railroad company refused to comply with that order, and on the 7th day of May, 1870, the court of common council by resolution authorized and directed the board of road commissioners to contract with the railroad company to construct a bridge at its own exclusive expense, the city to assume the grading of the street up to the bridge on either side.

In pursuance of that resolution, the railroad company on the 14th day of July, 1870, by its vice-president, and the board of road commissioners by its chairman, executed such a contract, and the parties respectively performed the portion of the work stipulated for by each. The bridge and abutments were erected by the railroad company, no part of which was placed on any portion of the plaintiff's land, and the embank

ments or approaches were constructed under the direction of the city and were in part on land in said street owned in fee by the plaintiff subject to the public easement.

The plaintiff's lot was immediately contiguous to said street and crossing, and her dwelling house was erected in 1866 in conformity to the existing grade ; but by the erection of said embankment the first floor of her house, which was four feet above the former grade of the street, became eleven feet below the new grade, by means of which her basement was often flooded with water and she was subjected to great annoyance and injury.

The court of common council passed an order on the 14th of January, 1873, directing the board of compensation organized under section 27th of the city charter, to assess and determine all damages and benefits accruing to all parties interested, by the "filling in of the approaches to said bridge." The board estimated and assessed the plaintiff's damages, above the benefits received by her, at $2,000, and its report and assessment were confirmed and accepted by both branches of the common council, and an order was passed making the assessment in conformity thereto, but the mayor returned the order with his disapproval and the vote adopting it was therefore reconsidered and the order was rejected by the common council.

This court in construing a provision in the charter of another railroad corporation, precisely similar to the one in question here, decided in a case involving substantially the same facts, that such an injury as the one complained of did not constitute a *taking* of the land of the plaintiff within the meaning of the constitution of this state or of the charter of the defendant, but that the injury was of such a character as was contemplated by the legislature and provided for in the defendant's charter, and that under the clause requiring " payment of all damages that may arise to any person or persons," the plaintiff was entitled to recover for the consequential injury which he sustained. *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 294. In our judgment this authority is entirely decisive of the right of the plaintiff to

recover against some one, and we think there is upon principle no serious difficulty in determining where the liability legally belongs. The immediate cause of the injury to the plaintiff was the erection of a high embankment which constituted one of the approaches to the bridge, and which was constructed immediately in front of her dwelling. It might appear on first impression that the city, by whose apparent authority this part of the work was done, was at least primarily liable for the damage which was thus occasioned to the plaintiff, but when we carefully consider the provisions of the charters of both defendants, and the duties and liabilities of the city under the law, we find as we think insurmountable obstacles in the way of sustaining the claim against this defendant. The only duty resting upon municipal corporations with respect to highways and bridges within their corporate limits is imposed by the legislature and is limited to the making and maintaining them in a condition safe and convenient for the public use. When this duty is reasonably discharged the legal obligation is fully satisfied. But the city was not then engaged in the performance of that duty. The structure ordered was not required to discharge any obligation properly resting on the city. It had fully performed its duty with respect to Prospect street before the passing by the common council of the order which underlies all the subsequent proceedings. The necessity wholly originated in the exercise by the railroad company of its corporate authority to lay its rails and run its trains through the city, and to intersect and cross its public streets, which authority it exercised on the expressed condition that it should use its franchise within the city limits under the rules and regulations of the common council, and should restore the streets so crossed by it to their former usefulness. This was the consideration and price it agreed by the acceptance of its charter to pay for that valuable privilege, and the occasion for a change at the crossing of that street arose solely from the acts of the railroad company thus done under its charter, and from no act or omission by the city.

But independently of those considerations, the city cannot

in our judgment be held liable. All the legal obligations which devolve upon it with respect to this subject have their origin in the highest legislative authority, and are connected with duties of a public and governmental character only, and from liability for the reasonable performance of those duties the municipality enjoys complete legal immunity. *Judge* v. *City of Meriden*, 38 Conn., 90.

It may perhaps be suggested that the city, notwithstanding the legal obligation which rested on the railroad company to construct and maintain the bridge and approaches, had by the action of its common council in authorizing and directing its board of road commissioners to make the contract which was entered into by them and the railroad company, and in constructing the approaches, assumed a liability which it can not now deny. We consider it a sufficient answer to such a claim, that by the law, and also by the voluntary act of the railroad company, the liability attached to the company and the city was absolved from it; and the common council without authority expressly conferred upon it by the city, if indeed even with it, had no power to bind the city by such a contract as they authorized to be made. Where there is no duty devolving on such a corporation none can be legally assumed. The acts done under such an assumption were, as to the city, *ultra vires*, and without consideration, and must be considered as having been done by the agents of the railroad company. *Abendroth* v. *Town of Greenwich*, 29 Conn., 356; *Gardner* v. *Boston & Worcester R. R. Co.*, 9 Cush., 1.

With respect to the other defendant the case is entirely different. We have already noticed that by virtue of its charter its right to cross Prospect street was subject to the obligation to restore it to its former usefulness. The reasonable meaning of this requirement is that it should make the street safe and convenient for the public. When the railroad was constructed that street was located on the margin of the city proper and was then a comparatively unimportant way. Crossing it at a grade with locomotives and trains of cars was not considered dangerous to persons traveling on it, and its usefulness was not thereby so impaired that the public

convenience then required a different or safer mode of crossing. But in the quarter of a century which has intervened between the building of the railroad and the passing of the order for the erection of the bridge, the growth and extension of the city have been steady and uninterrupted, and Prospect street had thereby become such an important avenue that it was no longer safe to permit railroad trains to cross it on a level with the surface of the street.

It is urged with some plausibility that the charter of the railroad company by fair construction only required it to restore a street crossed by it to its former usefulness by repairing at the time the crossing was first made any defect or danger then produced by it, and not to remedy any defect or guard against any danger which should have afterward arisen in consequence of the enlargement of the city and the increased travel upon its streets. In a case against the same railroad company, (*English* v. *N. Haven & Northampton Co.*, 32 Conn., 241,) the contrary principle was established in its application to circumstances which in sound reasoning cannot well be distinguished from those existing in this case. There a bridge over a railroad crossing of this company in the city of New Haven was constructed of suitable capacity to accommodate the public when the railroad was first built, but by the increase of travel incident to the growth of the city the public convenience afterwards required a material enlargement of the bridge, and it was held that the obligation of the company was a continuing one and commensurate with the increasing necessity of the public. The original duty was fully discharged, but a new and additional one was created by a change of circumstances, and its performance was required, not because it would be beneficial to the company to perform it, but because the convenience, necessity and safety of the public demanded it. The charter of the company is an open one, subject to amendment and repeal, and it was held that it was rightfully amended by a subsequent act of the General Assembly relative to the charter of the city of New Haven herein before recited, by which the common council was given supervision over all bridges crossing railroads within the city,

and the power of ordering the widening and repairing of the same. Both the occasion and the reason for that determination are so strictly analogous in principle to those in the case under consideration, that we are able to discover no propriety in subjecting the company in one case, and exempting it in the other.

By another provision already referred to of the charter of this railroad company, it was only authorized to use that part of its railroad within the limits of the city in such a manner and subject to such rules and regulations as the common council of the city should prescribe. We think there was a continuing duty on the railroad company to comply with such reasonable rules and regulations of the common council as they should at any time in the varying exigences of the public safety make, and especially with such as required it to restore to its former usefulness a public street which, in consequence of its having crossed it, had after a lapse of time become incommodious and unsafe, and which under the provisions of its own charter it was bound to restore.

The privilege of crossing the streets of the city is a part of the franchise of the company, and the necessary approaches constructed for the purpose of restoring city streets to their former usefulness under and as a condition to the exercise of the privilege, are a part of the railroad structure authorized by its charter, and in their erection a party incidentally injured has as perfect a remedy against the company for consequential damages, as for a direct injury by it in the original construction of its railroad. The obligation to make compensation is as strong in one case as in the other, and to the discharge of that obligation in the manner prescribed it impliedly bound itself by its acceptance of its charter. *Parker* v. *Boston & Maine R. R. Co.*, 3 Cushing, 116; *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 310.

It is insisted that this case is essentially different from the one last cited, because here the bridge is found to have been required by public convenience and necessity only, while there it was for the sole benefit and accommodation of the railroad company. We do not see that this distinction affects

the obligation of the company in this particular. If public convenience and necessity, by the growth of the city and the resulting increase of travel, require the change in order to restore the street to its former usefulness, the duty of the company under its charter, which was before inchoate, is complete, and the same responsibility adheres to it as if the work was demanded for its corporate benefit alone; and to the responsibility in the performance of the work are attached all the legal consequences which flow from the improper and injurious performance of it. The fact that the duty is by law imposed upon the company is sufficient to charge it with all the consequences of such an execution of it as results in injury to others.

It may perhaps be said that the order of the common council to the railroad company extended only to the abutments and bridge proper, and did not embrace the approaches. It is true the literal phraseology of the order is confined to the bridge alone. No other part of the structure is specified, but the common council must be presumed to have acted intelligently and to have intended the object which was sought to be accomplished. The building of the bridge was necessary to give the public a safe and convenient passage over the defendant's track, and the filling in of the approaches was required in consequence of the erection of the bridge in order to restore the street to its former usefulness, which it was made the duty of the defendant to do. A bridge which was to be many feet above the grade of the street and crossing, and when consequently a high embankment for approaches was absolutely necessary, would be useless without such a material portion of the structure, and it must necessarily have been contemplated as a part of the bridge. When the order was made, it is clear the common council were endeavoring to compel the railroad company to do what was required to restore the street to a safe condition, and both the bridge and approaches were needed for that purpose. We think the case is in this particular readily distinguished from that of the *City of New Haven v. The N. York & N. Haven R. R. Co.*, 39 Conn., 128. The question in that case was whether the

railroad company was obliged to keep in repair the pavements and sidewalks in a street which at the point in controversy was an approach to a bridge over the defendant's track, which bridge and approach the defendant had previously built in pursuance of its charter. The court held that the company was not liable under the 33d section of the city charter herein before recited, to make the ordinary repairs upon the pavements. When the railroad company built its road it restored the streets crossed by it to their former usefulness by the construction of both bridges and approaches, and had therefore done all that it is contended by the plaintiff that the New Haven & Northampton Company should have done in this case, and the court, in construing that section of the city charter, which in its language is strictly limited to the "building, widening and repairing of bridges crossing railroads in said city," decided that the word "bridges" as there used was restricted to the bridge proper, to the exclusion of embankments, filling and approaches, unless the immediate approaches should be considered a part of the bridge structure. The court admit that the word may in certain connections be so used as to include the adjoining embankments and approaches, and say that "the true reason for requiring railroad companies to build and maintain bridges and their approaches is that the construction and operation of their railroads make such structures necessary when otherwise they would not be needed. They should therefore on principles of natural justice be built and maintained by railroad companies. All such repairs as from time to time become necessary to the structures as such, should be at the expense of the railroad companies. But the repairs of highways upon and over the approaches to a bridge, if the necessity for the repairs in no way arises from the existence or operation of the road, and if they are such as would be needed independently of the existence of the road, justly remain a charge upon the town or city." Id., p. 132. In the present case the construction and operation of the railroad made the bridge and approaches necessary when they would not have been otherwise required, and the work was not needed to be done independently of the existence of

the railroad, but altogether on account of its existence. The reasoning of the court was satisfactory upon the question before it, and is equally pertinent and convincing in favor of such a construction as in this case would include, within the meaning of the word bridge, the necessary embankments and approaches.

It is farther intimated that on the 14th day of April, 1869, the city of New Haven had no power to impose on the New Haven & Northampton Company the burden of raising the highway and constructing the bridge in front of the plaintiff's premises, because, by the provisions of the city charter then in force, the authority of the court of common council did not extend to the *construction*, but only to the *widening* and *repairing* of bridges over railroads at street crossings within the city limits. We regard this, if true, as not vitally important, for the reason that we do not consider the liability of the railroad company to depend entirely, or mainly, on the provisions of the city charter, but on those of the charter of the company itself, which require it to restore highways crossed by it to their former condition of usefulness, and to construct and use that part of its railroad within the corporate limits of the city in such a manner and subject to such rules and regulations as the common council of the city should prescribe. Having accepted its charter with those qualifications, it gave to them an important and controlling influence on its duty with respect to the construction of the bridge and its necessary appendages, and on its liability for injury done in such construction.

The charters of corporations which confer exclusive privileges for the particular advantage of the grantees, are to be construed liberally for the benefit of the public, and strictly as against the corporations, and we have not exceeded this just principle of interpretation in our construction of this defendant's charter.

We advise the Superior Court to render judgment in favor of the city of New Haven, and against the New Haven & Northampton Company for $2,000 damages, as pro formâ found by the Superior Court.

In this opinion PARK, C. J., and CARPENTER and FOSTER, Js., concurred.

PARDEE, J., dissented, being of opinion that the New Haven & Northampton Company did not, either directly or indirectly, do the act complained of, but that it was done by the city of New Haven, and in the discharge of a governmental duty imposed upon it; and that judgment should therefore have been rendered in favor of both the defendants.