PATRICK McKEON vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The location of an ordinary steam railroad upon a highway is a taking of property, for which the owner of the fee is entitled to compensation. The fact that the tracks were put there as a necessary and temporary expedient to facilitate the removal of grade-crossings ordered by the State, and were taken up as soon as that work was completed, is important only in determining the amount of the landowner's compensation.

The police powers of a State are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions. If they are exercised by legislation which violates any right guaranteed by the Constitution of the State or of the United States, they are so far forth invalid.

The constitutional prohibition against taking property for public use without compensation, is effective, as to a taking authorized by a statute making no specific provision for compensation.

The defendant's charter authorized it to take real estate, but required it to pay all damages arising from such taking. *Held* that this liability was not withdrawn because it was compelled by law to make the change which involved the damage to the plaintiff.

For the purpose of eliminating certain grade-crossings, the defendant, pursuant to legislative authority, laid its temporary tracks in a highway alongside its location, upon that part of the street owned in fee by the plaintiff, and built a fence near the outer edge of the sidewalk, thereby cutting off all direct communication between the main roadway and his premises, and ran all its trains over these tracks for more than a year. *Held* that this was a taking of the plaintiff's property which entitled him to substantial damages.

Whether the plaintiff's injury would have been too remote to have supported a judgment in his favor, if none of his property had been taken and his access to the highway not directly obstructed, *quære.*

The temporary tracks were placed above the established grade of the street, and this caused puddles of water to be formed upon the sidewalk, making its use inconvenient. *Held* that this was an element of damage directly attributable to the defendant's wrongful use of the roadway.

To facilitate the work of elevating its permanent tracks, the defendant placed quantities of material, machinery, and other apparatus, upon that part of the street between its location and the temporary tracks. This was done with due care and continued for a reasonable time only. *Held* that in this respect the defendant occupied the position of an adjoining proprietor, and that such use of the highway was one of those which were contemplated when it was established.

Argued November 5th—decided December 5th, 1902.

ACTION for obstructing a highway so that the plaintiff, an abutting proprietor, owning the fee in the highway, was deprived of reasonable access to or use of his premises ; brought to the Court of Common Pleas for Fairfield County. The defendant suffered a default and moved to be heard in damages, which hearing was had before Hon. Charles B. Andrews as a committee. His report was accepted (*Curtis, J.*) and the case reserved for the advice of this court as to the judgment to be rendered. *Judgment advised for substantial damages.*

The case is sufficiently stated in the opinion.

*Stiles Judson, Jr.,* for the plaintiff.

*Goodwin Stoddard* and *Arthur M. Marsh*, for the defendant.

BALDWIN, J.   The defendant seeks to justify the acts complained of, on the ground that they were reasonably incidental to the work of elevating its railroad tracks in the city of Bridgeport so as to remove certain dangerous grade-crossings, in obedience to the command of the State.   That it was bound to obey this command, as found in the resolution of the General Assembly approved January 22d, 1895, and that the general plan adopted for that purpose, and embodied in the agreement between the city of Bridgeport and the defendant, could not be successfully attacked for illegality by one whose land might be taken to carry it out, are no longer open to question.   *Mooney* v. *Clark*, 69 Conn. 241 ; *New York, N. H. & H. R. Co.* v. *Wheeler*, 72 id. 481 ; *Wheeler* v. *New York, N. H. & H. R. Co.*, 178 U. S. 321.   The board of railroad commissioners, in 1896, on a hearing had after public notice to all persons interested, approved the agreement (which is recited in *Mooney* v. *Clark*), and ordered its execution.   It was also confirmed by the General Assembly in 1901 (13 Special Laws, 730).   One of its provisions was that during the progress of the work the defendant should " have the free use of such streets or portions of streets and the right to temporarily close such streets as may be necessary for the convenient prosecution of the work ;" and the order so made by the railroad commissioners in 1896 specifically stated that " we deem it necessary and proper, for the due execution of the purposes of said resolution, and do order, that streets in said city be temporarily used, occupied, and closed as stipulated in said agreement."

The resolution of 1895, to which reference was thus made, directed the railroad commissioners to make " all orders " which they might deem necessary as to " the temporary use, occupation or closing of any street in said city, and including the number of tracks to be constructed by said company." In 1899, without giving any further notice, the board of railroad commissioners made another order that the defendant

should temporarily use, occupy and close, between certain points, a street in Bridgeport known as Railroad Avenue, which ran parallel and adjacent to its railroad, and " lay and use two temporary tracks " on that portion of the street during the progress of the work.

The plaintiff owned a lot of land fronting on this part of Railroad Avenue, on which had been erected a building containing a grocery store and several tenements, and a barn which he used as a livery-stable. The defendant laid two railroad tracks on that half of the street of· which the plaintiff owned the fee, and, to promote public safety, built a tight fence near the outer edge of the paved sidewalk in front of his store ; the sidewalk, which was about six feet wide, becoming thus the only part of the avenue left open for public use. All direct communication between his lot and the main roadway of the street was thus cut off. On the tracks so laid the defendant ran all its trains for more than a year, which was no longer than was necessary for the completion of the work. Meanwhile it was occupying its location for the construction of its new roadbed and laying its permanent tracks. It could have reserved room enough upon its location for laying these temporary tracks, and could have run all its trains over tracks so laid while the work was in progress ; but time and money were saved and the danger, both to its workmen and to the public, lessened, by putting them in the street, and the committee has found that it was necessary for the company to do all that it did.

Whatever authority the General Assembly could give for the temporary occupation of Railroad Avenue for railroad purposes has been given. That authority is ample to protect the defendant against any charge of the commission of a public wrong. No statute, however, can avail to justify the taking of private property for public use without just compensation. Constitution of Conn. Art. 1, § 11. The location of an ordinary steam railroad upon a highway is a taking of property. It imposes an additional burden upon the soil, for which the owner of the fee is entitled to demand compensation. *Imlay* v. *Union Branch R. Co.*, 26 Conn. 249–

260; *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 id. 146, 150. The defendant put this burden on soil owned by the plaintiff. That it put it there merely as a temporary expedient in aid of a lawful work, and removed it as soon as the work was completed, is only important in determining the amount of compensation to which he is entitled. A lawful work cannot justify an unlawful expedient; and any expedient is unlawful as respects one whose property is thereby taken without his consent, unless he is first paid for what he is to lose. Nor is a wrongful taking of property, whether it be real or personal, any the less a taking, because it is not permanently appropriated to the wrongdoer's use.

It is contended by the defendant that all its acts were done at the command of the State; that this command was an exercise of the police power; and that for damage due to an exercise of that power no compensation can be recovered unless by force of some express statutory provision.

The phrase "police power" has been sometimes used by writers upon legal subjects as if it denoted some peculiar and transcendent form of legislative authority. The word "police" does not naturally carry any such meaning. Its use in this connection came into our law early in the nineteenth century. Russell, The Police Power of the State, 231. In the Constitution of this State (Art. 10, § 2) it is provided that each town shall annually elect such officers of local police as the laws may prescribe. This clearly refers to officers of local administration and government. So, as applied to the State, police laws are laws of general administration and government. Its power to enact such laws extends over all subjects within its territorial limits. *Prigg* v. *Pennsylvania*, 16 Pet. 539, 625. The police powers of a State, in the apt words of Chief Justice Taney, "are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions." *The License Cases*, 5 How. 504, 583. If they are exercised by legislation which violates any right guaranteed by the national or State Constitution, they are so far forth invalid. *Leisy* v. *Hardin*, 135 U. S. 100, 108; *State* v. *Conlon*, 65 Conn. 478.

The legislation on which the defendant relies in the case at bar makes no direct provision for compensation for property taken. The Constitution does; and that is enough.

The defendant, however, is an artificial person, gifted with a franchise to construct and operate a railroad. Its charter gave it power to enter upon and use all such real estate as might be required for constructing its road with all necessary turnouts, through Bridgeport, but made it liable to pay all damages that might thus arise to any person. 4 Special Laws, 1020, 1021; Public Acts of 1871, pp. 713, 714. This liability was not removed because it was compelled to make the changes which involved the damage to the plaintiff's property which is the subject of this action. *Burritt* v. *New Haven*, 42 Conn. 174; *Cullen* v. *New York, N. H. & H. R. Co.*, 66 id. 211. If none of his property had been taken, and his right of access to the highway not directly obstructed, it may be that his injuries would have been too remote to support a judgment in his favor. *Hollister* v. *Union Co.*, 9 Conn. 436; *Newton* v. *New York, N. H. & H. R. Co.*, 72 id. 420, 429. But that, in order to remove a danger to public safety, it was compelled to eliminate these grade-crossings by taking what belonged to the plaintiff, did not relieve it from paying him its value. It could not enrich itself at his expense, without his leave, by barring up the entrance to his livery-stable, so that it might use the ground for temporary turnouts, on which to transact its own business as a common carrier. It was not in the position of an ordinary agent of the State, selected to construct a public work, in which such agent has no personal interest. Its railroad served both public and private uses. It received a private benefit from its franchise, and it was bound to bear whatever burdens the charter which gave it had attached to its exercise, when such exercise required and resulted in the appropriation to its own use of rights and property vested in another. The plaintiff's real estate was so appropriated as truly as if the temporary tracks had been laid behind his store instead of in front of it, or as if his lot had fronted on a street not adjacent to the railroad and the temporary tracks had been laid on that.

The tracks were raised above the established grade of the street, in consequence of which puddles of water, coming from rain or melting snow, were sometimes formed upon the sidewalk, and remained for days, making its use inconvenient. This was an element of damage directly attributable to the wrongful use of the roadway, and to be considered in determining the extent of the injury done to the plaintiff's property.

The defendant placed upon the part of Railroad Avenue which is in question, between its location and the temporary tracks, large quantities of material, articles of machinery, and other apparatus, to facilitate its work upon its location; but this is found by the committee to have been done with due care and only for a reasonable time. Such a use of a highway by an adjoining proprietor, while temporarily engaged in improving his land, is one of those which were to be contemplated when the highway was established. The railroad company occupied the position of such an owner, by virtue of its location, whether it owned the fee or simply a right of way. *Fitch* v. *New York, P. & B. R. Co.*, 59 Conn. 414.

The committee, at the request of both parties, embraced in his report a decision not only as to the facts but as to the law applicable to them, and assessed only nominal damages. The facts found, in the view of the law which we have taken, required the assessment of substantial damages. The report states that by reason of the tracks in the street and their use for train service, and from the cutting of the plaintiff off from access to the street, he suffered consequential loss and damage, as alleged in his complaint, to the amount of $1,365. This sum covers compensation for actual loss of rent for one year and five months; depreciation of the rental value of the property during the same period; depreciation in the value of the use of a tenement occupied by himself as a family residence; permanent injury to the building from the jar occasioned by passing trains; injury to the sidewalk; and the cost of keeping three horses, of which he could make no use, through one winter. No question has been made before us

as to the right of the plaintiff to recover for any of these items of loss, in case he were entitled to substantial damages.

The Court of Common Pleas is therefore advised to render judgment in his favor for $1,365, with interest from the date when the report was filed.

The costs in this court will be taxed in his favor.

In this opinion the other judges concurred.