## The State *vs.* Matthew McMahon.

Third Judicial District, New Haven, June Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A by-law of the city of Meriden, authorized by its charter, provided that the owner, occupant, or person in charge of a building or lot of land adjoining a sidewalk in said city, should cause the snow falling on such walk to be removed, and the ice thereon to be covered with sand or other suitable substance, within six hours after the same had fallen or formed, under penalty of a fine for neglect. *Held* that the by-law was not void for uncertainty or vagueness, and did not violate any constitutional right of the landowner or occupant.

In creating a municipal corporation it is within the constitutional power of the legislature to define and enforce the duties of citizens to each other and to the State, and therefore to impose upon landowners fronting upon sidewalks the burden of keeping such walks free from snow and ice and safe for public travel.

A law passed apparently for the purpose of defining and enforcing the duties of citizens may, however, be unconstitutional and void, because in reality it takes private property for public use without compensation, or arbitrarily discriminates against certain citizens in distributing a public burden; but it will not be adjudged invalid simply because the service required is unpaid, or is incident to certain employments or to the ownership of certain kinds of property. By reason of the inherent conditions of citizenship, every citizen is bound to render some gratuitous service to the State; all that he can insist upon is that such service shall be reasonable in view of the exigencies which require it.

The theory that all taxation must be equal and uniform is not a fundamental maxim of government limiting legislative power, unless embodied in the Constitution. The Constitution of this State contains no such provision, and therefore the burden imposed upon certain landowners by the by-law in question—even if it can fairly be regarded as a tax—is not unconstitutional merely because it does not affect equally and alike every resident or property-owner of the city.

Argued June 5th—decided July 24th, 1903.

CRIMINAL prosecution against an occupant of real estate for neglect to remove snow from his sidewalk, in violation of a city ordinance, brought by appeal of the accused to the Criminal Court of Common Pleas in New Haven County and reserved by that court, *Cable, J.*, upon a demurrer to the information, for the advice of this court. *Judgment overruling demurrer advised.*

*Cornelius J. Danaher*, for the accused.

*Robert J. Woodruff*, Prosecuting Attorney, for the State.

HAMERSLEY, J. The common council of the city of Meriden passed a by-law containing the following provisions: " Sec. 7. Whenever the sidewalk fronting or adjoining any lot of land in the city of Meriden shall be wholly or partially covered with snow or ice, it shall be the duty of the owner or occupant of such building or lot of land, or persons having charge thereof, to cause said sidewalk to be made safe and convenient . . . by removing said snow or ice therefrom

within six hours after the accumulation of the same thereon, or, in the case of ice, by covering the same with sand or other suitable substance, the same to be done within six hours after the accumulation of said ice. . . . Sec. 8. Any person failing or neglecting to comply with the provisions of the foregoing section shall forfeit and pay a fine of $10 to the treasurer of the city for the use of the city, and any failure or neglect to comply with the provisions of said section shall be a misdemeanor, and it shall be the duty of the city attorney to prosecute any person so failing and neglecting to comply therewith."

The legislature authorized the common council of the city of Meriden to enact by-laws " to compel the occupants, persons in charge, or the owners of lands or buildings, to remove snow and ice from the sidewalks and gutters in front of such land or buildings, and to keep such sidewalks safe for public travel," and to impose fines for violation of such by-laws; and to prescribe the mode of enforcing the fines by action of debt, or by prosecution as in case of misdemeanor. 8 Special Laws, p. 307; 12 id., p. 747.

This is a prosecution by the city attorney for a violation of the by-law above quoted. The defendant demurred to the information on two grounds only: because said by-law is vague and indefinite, and because it violates the State and Federal constitutions, and is therefore void. The case is reserved for the advice of this court as to what judgment should be rendered upon this demurrer.

The offense for which the defendant is prosecuted is not described in the by-law in terms so vague and indefinite as to render it for that reason invalid.

The other ground of demurrer presents this question: Does the legislature in enacting a law which makes it the duty of all inhabitants of a city—being owners, or agents of owners, of land abutting on sidewalks within the city limits—to aid in keeping those sidewalks safe for the common use, by removing, or otherwise rendering harmless, accumulations of snow and ice on the sidewalks in front of their respective premises, violate any constitutional provision? It is true,

as claimed by the defendant, that this question in its present form is now presented to us for the first time. But we think that the trend of our decisions, in cases involving similar considerations, leads naturally if not necessarily to a negative answer. *State* v. *Wordin,* 56 Conn. 216, 226 ; *Levick* v. *Norton,* 51 id. 461, 469 ; *Yale College* v. *New Haven,* 57 id. 1–9 ; *Lewis* v. *New Britain,* 52 id. 568 ; *Hartford* v. *Talcott,* 48 id. 525, 534.

We are referred to decisions in other States where such legislation has been held void. *Ottawa* v. *Spencer,* 40 Ill. 211 ; *Gridley* v. *Bloomington,* 88 id. 554 ; *State* v. *Jackman,* 69 N. H. 318. The argument which leads to such a conclusion would seem to be this : The State imposes upon cities the duty of constructing and maintaining, in condition safe for public travel, highways within their limits. It punishes a neglect of this duty by appropriate penalties, including a liability to pay damages to a person injured by means of a defect in a highway existing through such neglect. The repair, as well as the construction of highways, is a public improvement, and contributions by individuals for that purpose, through enforced labor or payment of money, is a tax. Such tax may be collected from a limited taxing district including those only whose property is specially benefited by the public improvement, or from a taxing district including the whole city ; but in either case the tax must be laid upon a principle of uniformity and equality. Sidewalks are a part of the highway, and cannot be distinguished in respect to their construction, maintenance and care, from the rest of the highway. The general duty of maintaining highways in a condition safe for public travel has been construed as including the duty of removing or rendering harmless accumulations of snow and ice upon sidewalks ; therefore such removal is a repair of a highway and a public improvement, for which no individual can be taxed unless upon a principle of uniformity and equality. Requiring each owner of land abutting on a sidewalk to remove the snow and ice accumulated on the walk in front of his premises is a violation of this principle, whether the requirement be regarded as an

assessment for special benefits or as a general tax. Even if the requirement to remove snow and ice from a sidewalk cannot be regarded as a tax, yet it is certainly a burden, and a purely public burden cannot be laid upon a private individual, except as authorized in cases to exercise the right of eminent domain, or by virtue of proper proceedings to enforce special assessments or special taxation. *Chicago* v. *O'Brien,* 111 Ill. 532, 537. As an exercise of the right of eminent domain, the requirement takes private property for public use without compensation ; moreover, the requirement imposes a burden and creates a duty which does not bear on all citizens alike, and violates the principle of impartial equality which pervades the Constitution. *State* v. *Jackman,* 69 N. H. 318.

In deference to the high character and acknowledged authority of the courts which have taken this view, we have carefully considered these decisions, but we cannot accede to all the assumptions on which the conclusion reached seems to be founded. The constitutions of the States where this view is taken contain provisions adopting as a fundamental maxim some theory of uniformity and equality in taxation, and purporting to limit the field of taxation by requiring all laws imposing taxes to conform in respect to the subjects of taxation, the modes of valuation, and stress of the tax, to this theory of uniformity and equality. Our own Constitution contains no such provisions. On the contrary it distinctly secures the right of the people to tax themselves through their representatives, and recognizes the duty of exercising the power of taxation wisely and only for the public good, as a legislative duty for the performance of which the General Assembly is responsible to its constituency, and recognizes the power of considering the conditions of population or property, the theories and maxims of political economy or moral philosophy which may affect taxation, and of determining what, on the whole, is a wise and fair mode of distributing the burden, as a legislative power which the judicial department is by express provision forbidden to exercise. Nor is the aphorism " taxation must be equal and

uniform" embodied as a fundamental maxim in the United States Constitution, restricting the power of taxation vested in Congress or the State legislatures. Such an aphorism, whatever view may be taken of its meaning and practical effect, is not a fundamental maxim of government, limiting the legislative power, unless embodied in the State Constitution. *State* v. *Travelers Ins. Co.*, 73 Conn. 255, 262; *Travelers Ins. Co.* v. *Connecticut*, 185 U. S. 364; *Sharpless* v. *Mayor*, 21 Pa. St. 147, 161. Possibly this difference in constitutional provisions may have influenced the view taken as to the real nature of the legislation in question. In several States, however, whose constitutions contained in some form the maxim of uniformity and equality in taxation, the courts have regarded legislation of this kind as not an exercise of taxing power within the range of that maxim, but simply as prescribing certain duties for all citizens in respect to the preservation of public safety, reasonable in respect of the burden imposed, and such as the State may prescribe without violating the constitutional guaranties enacted for the protection of personal liberty and rights of property from arbitrary and discriminating legislation. *Goddard, Petitioner*, 16 Pick. 504; *Carthage* v. *Frederick*, 122 N. Y. 268; *Reinken* v. *Fuehring*, 130 Ind. 382.

The legislation is not exempt from the general guaranties of the Constitution simply because it relates to those subjects of legislation commonly classed under the indefinite though convenient phrase of "police power." The whole legislative power is committed to the General Assembly subject to the restrictions contained in the Constitution, and no manifestation of that power is exempt from these fundamental limitations. A law which takes private property for public use without compensation is equally void, whether it is classed as an exercise of educational power in building a schoolhouse, or of police power in the destruction of property dangerous to health. Clothing infected with disease may be destroyed without compensation to its owner, not because the law authorizing it is a police regulation and so exempt from constitutional limitation, but because no right of prop-

erty is invaded by such destruction. So a law defining the duties of citizens to each other, or to the State, which gives special privileges to one man or set of men, or arbitrarily discriminates against certain citizens, is void, whether the duties prescribed relate to police regulations or any other subject. The law under discussion clearly belongs to this class of legislation, namely : defining and enforcing the duties citizens owe to each other and to the State. It is largely for the purpose of securing such legislation that governments are organized and legislative power is granted. The duties of citizens, as defined by the legislature, may differ according to status, occupation, or temporary relation, without involving arbitrary partiality or discrimination. The duty of a bailee to his bailor is made much more onerous by the fact that the bailee is an innkeeper or common carrier. The duty of a principal to answer for the acts of his agent is far more oppressive when the principal and agent stand in the relation of master and servant. Throughout the whole range of duties the legislature may properly, upon considerations of public policy or general advantage, enlarge or limit the obligations resting upon men engaged in certain employments or standing to each other in certain relations. The same is true of the duties or limitations attached to the ownership of land, which the legislature may and does from time to time modify; but a law for this purpose is clearly not void because it applies only to persons owning land. So there are many duties a citizen owes the State which it is the province of the legislature to define and enforce, although they may involve some limitation of freedom of action and the expenditure of some time or effort. Such duties must depend largely upon conditions and circumstances that change. Illustrations of this are given by Chief Justice Shaw in *Goddard, Petitioner*, 16 Pick. 504, and others will readily suggest themselves. Defining and enforcing such duties is and always has been an appropriate and necessary exercise of legislative power. It is true, an Act nominally for such purpose may in substance and in fact be a confiscation of property, or an arbitrary and partial discrimination between citizens equal be-

fore the law, and if so the Act is void. It is sometimes said that in determining the invalidity of such an Act the court merely passes upon a question of degree. This is not quite true. The extent of trouble involved in connection with the conditions and circumstances under which the stress of the duty may fall upon each as related to the character of the common good to be served, its importance, necessity, and the conditions affecting its accomplishment, is rather a legislative than a judicial question. Every citizen is bound by the inherent conditions of citizenship to render some unpaid service to the State, reasonable in view of the exigencies which require such service. A law which simply defines and enforces this duty is valid. Its wisdom and expediency are questions for the legislature. Whether a law apparently enacted for this purpose is void because in reality it takes private property for public use without compensation, or arbitrarily discriminates against certain citizens in distributing a public burden, is a judicial question. The law is not confiscation simply because the services required are unpaid, nor is it partial and arbitrary discrimination simply because the services required are incident to certain employments or to the ownership of certain kinds of property. The two laws are distinct, and the distinction can ordinarily be more satisfactorily ascertained through the exercise of practical common sense than by any indulgence in theoretical subtleties.

The inhabitants of the city of Meriden form a corporate community, clothed with special privileges and endowed with special powers for their common welfare and profit. These powers and privileges relate to the inhabitants as owners and occupiers of the land within the prescribed limits of the city. The creation of such a community for such a purpose necessarily involves special limitations as to the action of individuals, the use of property, the incidents, or powers and duties, attached to the ownership of property, and is the occasion for the springing up of a variety of special duties which the inhabitants owe to each other and to the territorial corporation of which they are members. It is the province of the legislature in creating such a community to define and

enforce the limitations in the use of property, of the right of property, or the incidents attaching to ownership, and of the duties, individual and corporate, involved in its creation. For this purpose it may entrust to the inhabitants the enforcement, through by-laws passed by them, of the duties defined in the charter of the corporation. When a city is entrusted with exclusive power over the construction and maintenance of highways within its limits, its streets are something more than the "King's highway." While they serve as avenues of public travel, that travel is mainly incident to the use and enjoyment of the land within the city limits. They are the entrance to every piece of abutting land, without which the land would be comparatively valueless. Practically the owners and occupiers of land abutting on the city street are the inhabitants of the city. The relation between the land in a city's limits and the network of streets, essential to the value and use of that land, is a peculiar one, and naturally attaches to the ownership of city lots special privileges and duties. In constructing sidewalks it is more convenient to place them within the lines of the highway, and so when laid they form a part of the highway. But the power and duty of building and maintaining highways does not necessarily include the duty of building and maintaining sidewalks. The construction of a sidewalk, like the establishment of a building line, may well be independent of the construction of a street, and in most cities sidewalks, because they are more closely related to the adjoining land and serve more directly the use of that land, are made the subject of separate rules and are constructed in pursuance of separate authority. A city covering a very few square miles of territory may readily have five hundred miles of sidewalks. To keep these walks clean and safe will promote the public health and safety, and also contribute to the value of every abutting piece of land to which they form the necessary entrance and whose owners and occupiers represent substantially the inhabitants of the city. A purely corporate oversight of these walks could not adequately meet all the emergencies affecting their cleanliness and safety, especially those emer-

gencies of storm and cold which in this climate render constant oversight and immediate remedy imperative. The inhabitants of a city, being the owners and occupiers of abutting land, are the ones, and practically the only ones, in a situation to render the aid convenient if not necessary to effectually secure that cleanliness and safety which promotes alike the general welfare and their personal interests. The rendition of this aid involves a slight burden, insignificant in comparison with the benefits secured. We think it clear that in requiring such aid the legislature acts within its legitimate legislative province of defining and enforcing the duties arising under such conditions. A law which merely accomplishes this purpose is valid.

To say that it is possible for the legislature, under cover of a law purporting to be of this kind, to accomplish actual confiscation of property, or the subjection of citizens to partial and arbitrary discriminations, is to state a proposition which may be sound but is not relevant to the facts of this case. To say that a law defining the duties of citizens in serving the State, is necessarily a violation of the constitutional guaranties against the confiscation of property and partial and arbitrary discriminations, because the service is unpaid, or is one that all citizens are not in a situation to render, is to state a proposition which is radically unsound. Such a theory of selfish immunity from all duties inherent in citizenship is supported by no principle of political ethics, and cannot safely be reduced to practice under any government.

The by-law upon which the information is founded is not void for the reasons assigned in the demurrer.

The Criminal Court of Common Pleas is advised to overrule the demurrer and render judgment accordingly.

In this opinion the other judges concurred.