THE STATE *vs.* CARL S. REYNOLDS.

Second Judicial District, Norwich, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

General Statutes, § 1358, prohibiting certain sales, exhibitions, and amusements, within one mile of fair grounds, has reference only to times when the fair is actually being held.

The statute does not apply to one who is pursuing his customary and lawful business at his usual place.

Every presumption is in favor of the constitutionality of a statute, and of two interpretations, that one will be adopted, if reasonable, which will render it valid.

The statute in question (§ 1358) is a constitutional and valid exercise of the police power of the State.

Argued April 26th—decided August 12th, 1904.

PROSECUTION for selling provisions from a temporary stand within one mile of a fair ground, in violation of § 1358 of the General Statutes, brought to the Criminal Court of Common Pleas in New London County where a demurrer to the information, upon the ground of the unconstitutionality of the statute, was sustained (*Noyes, J.*) and the accused discharged, from which judgment the State appealed. *Error*, *judgment set aside and cause remanded.*

*Hadlai A. Hull*, Prosecuting Attorney, and *Rollin U. Tyler*, for the appellant (the State).

*Charles B. Whittlesey* and *Clayton B. Smith*, for the appellee (the defendant).

TORRANCE, C. J.  The statute (§ 1358) prohibits any person from exposing for sale from any wagon or temporary stand "any articles of provisions . . . within one mile of the fair ground of any incorporated society." The defendant was prosecuted in the court below for a violation of this statute. He demurred to the information, mainly on the ground that the statute was unconstitutional and void, and the trial court sustained the demurrer on that ground and discharged him.

The main question upon this appeal is whether or not the Act is unconstitutional and therefore void. Before considering that question, however, it may be well to look at the Act itself in order to determine what its proper construction is ; for upon one construction an Act might be held to be unconstitutional, while upon another it would not be. As originally passed in 1868 (Public Acts of 1868, p. 147, Chap. 14) the Act, among other things, prohibited, with certain exceptions, the sale of provisions from any " huckster's shop, booth, tent, wagon, or other carriage . . . within the distance of one mile from any exhibition or fair of any incorporated agricultural or horticultural society," without the consent of the executive committee of such society. As changed in the Revision of 1875 it prohibited, among other things, the sale of provisions " from any wagon or temporary stand, . . . within one mile of the fair ground of any incorporated society," without the consent of the executive committee of such society. Rev. 1875, p. 518, § 23. The form given to the Act in the Revision of 1875 it has ever since retained. Rev. 1888, § 1562 ; Rev. 1902, § 1358. In its present form the statute, or so much of it as is involved in the present case, reads as follows : " Every person who shall, within one mile of the fair ground of any incorporated society, expose for sale from any wagon or temporary stand any articles of provisions, . . . without the written permission of the executive committee of such soceity, shall be fined seven dollars." It will thus be seen that the Act of 1868 in terms prohibited the sale of provisions within one mile of " any exhibition or fair " of a society ; while the present Act in terms prohibits

such sale within one mile "of the fair ground" of such society. Looking at the present Act in the light of its history, we do not think the revisers in 1874, while they profitably condensed the Act of 1868, intended so radically to change its meaning as to prohibit sales of harmless provisions at all times within one mile of a fair ground, even when no fair or exhibition was being held thereon. Just as we think they used the words "wagon or temporary stand" in the present Act, as the equivalent of the words "huckster's shop, booth, tent, wagon, or other carriage," in the former Act, so we think they used the words "fair ground" in the present Act as the equivalent of the words "exhibition or fair" in the former Act.

The present Act, then, must be held to forbid the lawful sale of provisions within one mile of a fair ground, only while an "exhibition or fair," of the kind contemplated by the statute, is being held on such ground; and the information is founded in the present case upon this view of the statute.

Another point relating to the construction of the statute requires a brief consideration. The claim is made that the statute prohibits persons from carrying on, within the mile limit while a fair is being held, their lawful, usual and ordinary business. This claim is without foundation. The Act of 1868 contained in express terms this provision, that nothing therein should prevent any person "from pursuing his usual and ordinary business at the place where said business has been previously carried on." The present Act contains impliedly a similar provision. It does not interfere with the usual and ordinary business of any one. It merely prohibits persons from engaging in a special, unusual, and temporary business on account of the fair. It prohibits a business induced solely by the existence of the fair, whose main object is to sell to those attending the fair, and which begins and ends with the fair. The farmer, or the merchant, whose usual and ordinary business it is to supply customers, within the mile limit, at their houses or places of business, with provisions, may continue to do so, though a fair may be in progress, without violating the statute. To construe

the Act as prohibiting at all times sales of provisions within the mile limit, and as operating upon persons whose usual business it is to make such sales, is to give it an effect which we think the legislature never intended it to have, and which might possibly render it invalid ; and where a statute is susceptible of two constructions, one possibly valid and the other possibly invalid, the one in favor of its validity should be adopted " if it may be done by any reasonable interpretation, though it be not the most obvious." *Wilton* v. *Weston*, 48 Conn. 325, 338 ; *Camp* v. *Rogers*, 44 id. 291, 299 ; *Miles* v. *Strong*, 68 id. 273, 287.

Construing the Act in the way above indicated, the next question is as to its constitutionality. Every presumption and intendment is to be made in favor of its validity, and unless it appears, beyond reasonable doubt, to be " a clear usurpation of power prohibited," it must stand as a valid Act. *State* v. *Lubee*, 93 Me. 418, 421 ; *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn. 210, 227 ; *Miles* v. *Strong*, 68 id. 273, 288. Plainly the Act in question is the result of an exercise of the police power of the State, meaning here, by that phrase, the power which, among other things, in given circumstances, compels obedience to the maxim *sic utere tuo ut alienum non laedas*. It has been said, and correctly enough, that " the police power of a State extends beyond the protection of health, peace, morals, education and good order. It is the power to govern men and things within the limits of its dominion. It comprehends all those general laws of internal regulation necessary to secure the peace, good order, the health and comfort of society, and the regulation and protection of all property in the State." *State* v. *Harrington*, 68 Vt. 622, 626. It has further been referred to as the " power to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State . . . and add to its wealth and prosperity." *Barbier* v. *Connolly*, 113 U. S. 27, 31. Every citizen holds his rights subject to the exercise, within constitutional limits, of this power ; and in the exercise of this power a large dis-

State *v.* Reynolds.

cretion is necessarily vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. *Lawton* v. *Steele*, 152 U. S. 133.

We deem the Act in question to be a valid exercise of the police power. It has long been the policy of this State to protect and aid financially public societies of the kind contemplated by the statute here in question, for the " encouragement or improvement of agriculture." To this end the State encourages them to hold such " exhibitions " and " fairs " as the statute in question contemplates, and delegates to them certain powers for the purpose of enabling them more effectually to carry out the objects for which they exist. General Statutes, §§ 4399–4409. Societies of this kind are justly considered to be of public benefit. The Act in question was ostensibly enacted for the protection of the fairs and exhibitions of such societies. When first enacted its title was " An Act for the Protection of Agricultural and Horticultural Fairs." We see no reason for supposing that it was enacted for any other purpose. It was not enacted for the benefit of any particular society but is general in its operation. It deprives the individual of no vested rights, and does not interfere with him in the pursuit of his usual and ordinary lawful business. It restrains him, not for the benefit of the society holding the fair, but for the public good; and it restrains him no further than appears to be reasonably necessary for the public good. Nothing is more common than restrictions of this kind. The question before this court, in the present case, is not whether the law in question is a wise or necessary law; it is simply whether the legislature had the power to pass it; and we are satisfied that it had, and that the law is valid. Laws similar in character to the law here in question have been passed in other States; and the right and power of the legislature to pass them has been upheld in the following cases : *State* v. *Read*, 12 R. I. 137 ; *Meyers* v. *Baker*, 120 Ill. 567 ; *State* v. *Cate*, 58 N. H. 240; *Commonwealth* v. *Bearse*, 132 Mass. 542 ; *State* v. *Stovall*, 103 N. Car. 416.

For the reasons given we think the trial court erred in sustaining the demurrer and rendering judgment for the defendant.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.