JAMES M. YOUNG, TRUSTEE, *vs.* JOSEPH A. LEMIEUX.

Second Judicial District, Norwich, October Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and SHUMWAY, JS.

Chapter 24 of the Public Acts of 1905, amending General Statutes, § 793, provides that in cases in which a notice of appeal to the Supreme Court of Errors has been filed, all proceedings to make or complete the record on such appeal shall be suspended during July and August. *Held* that this provision did not preclude either court or counsel from filing necessary papers at any time during those months, but merely prevented such papers from becoming operative until the expiration of that period.

It is undoubtedly competent for the legislature to adopt reasonable measures to prevent fraud in the sale of merchandise; and the

Young v. Lemieux.

constitutionality of a particular Act having that end in view must therefore depend upon whether the remedy prescribed for the evil is reasonably appropriate for that purpose, or whether, under the guise of a mere police regulation, it is in reality an unwarranted infringement upon personal or property rights.

Chapter 72 of the Public Acts of 1903 provides in substance that no retail dealer shall sell his entire stock in trade at a single transaction, unless he shall have given at least seven days' notice of his intention so to do, by a writing recorded in the town clerk's office in the town in which he conducts his business, describing the property, the parties and the terms of the sale; and General Statutes, § 4869, declares that sales made in violation of this provision shall be void as against existing creditors of the vendor. *Held* that the obvious purpose of the Act was to protect the creditors of retail dealers against a class of sales which were more likely to be fraudulent because of the opportunities readily afforded by the nature of the retail business and the manner in which it was usually conducted; and that while the Act in question might perhaps go to the verge of legislative power, it could not fairly be said that its restrictions were so burdensome in effect as to amount either to a taking of property or a substantial impairment of its value (*one judge dissenting*).

A sale of all the stock in trade of a retail druggist falls within the prohibition of the statute, although his stock in trade in a separate and independent business, carried on in another building and under another name, is not included in such sale.

In the present case some of the articles replevied by the vendor's trustee in bankruptcy were merely replacements by the defendant of like articles which had been sold by him from the stock after its purchase. *Held* that this fact did not entitle the defendant to retain the articles so replaced.

Argued October 16th, 1906—decided January 16th, 1907.

ACTION of replevin to recover the fixtures and contents of a retail drug-store, brought to and tried by the Superior Court in New London County, *Gager, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

In this court the appellee filed a plea in abatement, alleging that the appeal was not seasonably taken, to which the appellant demurred. *Demurrer sustained and plea in abatement overruled.*

John J. Phelan, for the appellant (defendant).

*Donald G. Perkins*, with whom was *Jeremiah J. Desmond*, for the appellee (plaintiff).

HALL, J. The plaintiff is the trustee of the estate of Philip E. Hendrick, who was adjudicated a bankrupt upon the petition of sundry creditors, dated September 19th, 1904.

On and for some years prior to August 31st, 1904, said Hendrick conducted personally, in his own name and in his building in Taftville in this State, a retail general store and meat market, and at the same time, in a store hired by him on the opposite side of the street, carried on a separate and independent retail drug business under the name of the Taftville Drug Company, which was managed by a licensed druggist employed by him.

The value of the stock in the general store was about $2,000, and of the stock, fixtures and soda fountain in the drug-store, about $3,500. There was no evidence at the trial of the separate value of the stock, fixtures, and soda fountain.

On the 31st of August, 1904, said Hendrick, at a single transaction and not in the regular course of business, and without any written bill of sale, and without having caused to be recorded the notice of his intention to make such sale required by chapter 72 of the Public Acts of 1903, sold and delivered to the defendant said drug-store and the whole of his stock, fixtures and soda fountain therein, for the price of $3,500, receiving therefor from the defendant $50 in cash, a small indorsed check, one note for $2,000 payable in five days, and one for $1,400 payable in seven days, both being signed by the defendant as agent. It was understood between Hendrick and the defendant that payment of said notes would not be demanded before January 1st, 1905. The defendant has never paid said notes, and it did not appear at the trial that payment thereof had ever been demanded.

The defendant had been managing said drug business as a clerk for Hendrick, for two months before such sale, with

the expectation of eventually buying it. He had no property, had previously failed in business and was owing debts on account thereof, and for that reason signed said notes as agent.

After such purchase the defendant continued to conduct said drug business, purchasing goods in small amounts from time to time from the receipts of the business to keep up the stock, and drawing from the receipts about $16 a week for his living expenses, until the goods were replevied by the plaintiff in January, 1905.

At the time of said sale Hendrick was largely indebted and was being pressed by his creditors, but he did not believe that he was in fact insolvent. His general store was closed by attachmant on the 16th of September, 1904. The property in the hands of the plaintiff is insufficient to pay the claims of Hendrick's creditors.

The trial court held that the sale to the defendant was not made to hinder or defraud creditors, nor in contemplation of insolvency, but that it was void under chapter 72 of the Public Acts of 1903 and § 4869 of the General Statutes, and rendered judgment for the plaintiff.

In his reasons of appeal the defendant claims that the trial court erred in holding, upon the facts above stated, that the sale of the drug business was a sale by Hendrick of "the whole, or a large part of his stock in trade," within the meaning of chapter 72 of the Public Acts of 1903, and was void under said Act and § 4869 of the General Statutes, and in not holding that said Act of 1903 was in conflict with the State and Federal constitutions.

In this court the plaintiff pleaded in abatement of the defendant's appeal, that the finding of facts for the appeal was filed, and notice thereof given to the defendant, on the 26th of July, 1906, and that the appeal was not filed until August 11th, 1906, and not within ten days after such notice of the filing of the finding.

To this plea the defendant demurred, upon the ground that he was not required to file his appeal within ten days after July 26th, since chapter 24 of the Public Acts of

1905 provides that "all proceedings to make or complete the record on such appeal shall be suspended during the months of July and August."

The plea in abatement is insufficient. The appeal was filed in time. The filing of the finding in July and of the appeal in August were effective, notwithstanding the provision that all proceedings should be suspended during those months. That provision was not intended to prevent either court or counsel from filing the necessary papers to make or complete the record on the appeal, during the months of July and August, to become operative upon the expiration of that period.

As the drug-store was not conducted as a part of the business of the general store, but as a separate and independent business, carried on in another building, and under another name, the decision of the trial court that the sale was within the statute is clearly sustainable, upon the ground that it was a sale of Hendrick's whole stock in trade in an independent business.

Section 4868 as amended by chapter 72 of the Public Acts of 1903 is not invalid as conflicting with either the Federal or State constitution.

In 1901 an Act entitled " An Act concerning Sales of Personal Property " was passed, which provided in effect, as afterward stated in § 4868 of the General Statutes, that any sale by such dealer, at a single transaction and not in the regular course of business, of the whole or a large part of his stock in trade, should be in writing, describing the property sold and all the conditions of the sale, acknowledged before competent authority, and recorded within one day after the sale in the town clerk's office where the vendor had his place of business; and, as afterward stated in § 4869 of the General Statutes, that such sales made without these formalities should be void as against the creditors of the vendor at the time of the sale. Public Acts of 1901, p. 1356, Chap. 161.

In 1903 an Act was passed, entitled " An Act concerning the Transferring of a Person's Business," which was

in force at the time the sale in question was made, and
which reads as follows: " Section 4868 of the general
statutes is hereby amended to read as follows : No person
who makes it his business to buy commodities and sell the
same in small quantities for the purpose of making a profit,
shall, at a single transaction and not in the regular course
of business, sell, assign, or deliver the whole, or a large
part of his stock in trade, unless he shall, not less than
seven days previous to such sale, assignment, or delivery,
cause to be recorded in the town clerk's office in the town
in which such vendor conducts his said business, a notice
of his intention to make such sale, assignment, or delivery,
which notice shall be in writing describing in general terms
the property to be so sold, assigned or delivered, and all
conditions of such sale, assignment, or delivery, and the
parties thereto."    Public Acts of 1903, p. 49, Chap. 72.
Said Act neither repealed nor changed § 4869 of the Gen-
eral Statutes.

In 1905 § 4868 of the General Statutes was further
amended, so that instead of absolutely prohibiting such
sales without such notice, as the language of that section
did, it should only render them void as against the vendor's
creditors.    Public Acts of 1905, p. 408, Chap. 211.

In *State* v. *Reynolds*, 77 Conn. 131, 134, 58 Atl. 755, in
sustaining, as a valid exercise of the police power of the
State, § 1358 of the General Statutes prohibiting any person
from exposing for sale from any wagon or temporary stand
any article of provisions within one mile from the fair
ground of any incorporated society, we expressly approved
of the language of the courts of other jurisdictions describ-
ing the police power of the State as extending " beyond
the protection of health, peace, morals, education and good
order," and as comprehending "all those general laws of
internal regulation necessary to secure the peace, good
order, the health and comfort of society, and the regulation
and protection of all property in the State," and as the
" power to prescribe regulations to promote the health,
peace, morals, education, and good order of the people,

and to legislate so as to increase the industries of the State . . . and add to its wealth and prosperity"; citing *State* v. *Harrington*, 68 Vt. 622, 626, 35 Atl. 515, and *Barbier* v. *Connolly*, 113 U. S. 27, 31, 5 Sup. Ct. Rep. 357.

In *Walp* v. *Mooar*, 76 Conn. 515, 521, 57 Atl. 277, we said of § 4868 as it read before it was amended in 1903, that it was not unconstitutional because it applied only to retail dealers, nor as depriving persons of their property without due process of law; that the purpose of the Act was to prevent fraud; that the legislature had the undoubted power to adopt reasonable measures for regulating the sale of merchandise in this State so as to prevent fraud; and that the Act then in question was clearly within that power.

No citizen has an absolute right to sell his property either in such manner or at such time as he may choose. Every person holds his rights, however fundamental they may be, subject to the exercise, within constitutional limits, of that governmental power vested in the legislature of the State in which he resides, which is commonly called the police power. *Crowley* v. *Christensen*, 137 U. S. 86, 11 Sup. Ct. Rep. 13.

While the exercise of such power by the legislature is only to be justified upon the ground that it is for the public good; that its purpose is the removal of an existing evil; that the provisions of the Act bear a reasonable relation to the evil sought to be cured, and that they are such as are not unduly oppressive upon individuals, and do not impose unnecessary restrictions upon lawful occupations,—yet when courts are required to pass upon the validity of such legislation it is to be remembered that in the exercise of such police power "a large discretion is necessarily vested in the legislature to determine, not only what the interest of the public require, but what measures are necessary for the protection of such interests" (*Lawton* v. *Steele*, 152 U. S. 133, 136, 14 Sup. Ct. Rep. 499); that every such law is not to be held void "which may seem to the judges who pass upon it excessive, or unsuited to its ostensible end, or

based upon conceptions of morality with which they disagree" (*Otis* v. *Parker*, 187 U. S. 606, 608, 23 Sup. Ct. Rep. 168; *Atchison, T. & S. F. R. Co.* v. *Matthews*, 174 U. S. 96, 19 Sup. Ct. Rep. 609); that "every presumption and intendment is to be made in favor of its validity, and unless it appears, beyond reasonable doubt, to be 'a clear usurpation of power prohibited,' it must stand as a valid Act." *State* v. *Reynolds*, 77 Conn. 131, 134, 58 Atl. 755; *Booth* v. *Illinois*, 184 U. S. 425, 22 Sup. Ct. Rep. 425; *State* v. *Main*, 69 Conn. 123, 37 Atl. 80; *State* v. *Feingold*, 77 Conn. 326, 331, 59 Atl. 211.

The manifest purpose of the Act in question is to protect creditors of retail dealers against a class of sales which are often fraudulent, and opportunities for making which are readily afforded by the nature of the retail business and the manner in which it is usually conducted. *Walp* v. *Mooar*, 76 Conn. 515, 57 Atl. 277. Enactments to prevent such fraudulent transfers are clearly within that class of legislation generally denominated police regulations. In considering whether, in passing this particular Act, the legislature has transcended the limits of its constitutional authority, we are to inquire whether the methods provided by the Act for curing the existing evil are reasonably appropriate for that purpose, and whether they unreasonably infringe upon personal or property rights.

Section 4868, as originally enacted, provided no other notice to creditors than by the recording of the bill of sale within one day after the sale. In enacting the amendment of 1903, the legislature probably believed that a notice before the sale would be a much more effectual means of enabling creditors to protect their rights than a notice after the sale had been made.

It may be that this Act approaches the verge of legislative power, but we cannot say that its requirements as to the manner and time of giving notice of the sale are so clearly unreasonable or so unnecessarily burdensome as to compel us to hold that any constitutional rights have been infringed. It cannot be said that such notice as creditors

would receive from the recording, seven days before the sale, of a notice of his intention to sell by the vendor, would give them an unnecessarily long time to take steps to protect their interests.

Although by the language of the amendment of 1903, taken strictly, sales of the character there described, made without the required notice, are absolutely forbidden, it is apparent, and especially from the fact that § 4869 was left unchanged, that they were only intended to be voidable at the instance of creditors.

It does not seem to us, either from a consideration of the requirements themselves of the Act, or of the facts of the case before us, that the restrictions placed by the legislature upon sales of the kind in question are such as will cause such serious inconvenience to those affected by them as will amount to any unconstitutional deprivation of property. A retail dealer who owes no debts may lawfully sell his entire stock without giving the required notice. One who is indebted may make a valid sale without such notice, by paying his debts even after the sale is made. Insolvent and fraudulent vendors are those who will be chiefly affected by the Act, and it is for the protection of creditors against sales by them of their entire stock at a single transaction and not in the regular course of business, that its provisions are aimed. It is of course possible that an honest and solvent retail dealer might, in consequence of the required notice before the sale, lose an opportunity of selling his business, or suffer some loss from the delay of a sale occasioned by the giving of such notice. But a "possible application to extreme cases" is not the test of the reasonableness of public rules and regulations. *Commonwealth* v. *Plaisted*, 148 Mass. 375, 382, 19 N. E. 224. "The essential quality of the police power as a governmental agency is that it imposes upon persons and property burdens designed to promote the safety and welfare of the general public." *Chicago, B. & Q. R. Co.* v. *State*, 47 Neb. 549, 564, 66 N. W. 624.

Statutes imposing even more severe restrictions upon

such sales than those of the Act before us, have been sustained in other jurisdictions in the cases cited in *Walp* v. *Mooar*, 76 Conn. 515, 57 Atl. 277, of *Squire & Co.* v. *Tellier*, 185 Mass. 18, 69 N. E. 312, *McDaniels* v. *Connelly Shoe Co.*, 30 Wash. 549, 71 Pac. 37, and *Neas* v. *Borches*, 109 Tenn. 398, 71 S. W. 50.

The fact that some of the goods replevied were placed in stock by the defendant after his attempted purchase from Hendrick does not entitle the defendant to retain them. It appears that he merely replaced goods sold with others purchased with the avails of such sales.

There is no error.

In this opinion BALDWIN, PRENTICE and SHUMWAY, Js., concurred.

HAMERSLEY, J. (dissenting). Chapter 72 of the Public Acts of 1903, whose validity is challenged in this action, is in form an amendment of chapter 161 of the Public Acts of 1901 (Rev. 1902, §§ 4868, 4869, 4870), but is in substance and legal effect a repeal of the Act of 1901 and the enactment of a new statute of a radically different character.

The former Act required a sale of his stock in trade by a retail dealer to be made in writing and recorded within one day after the time of sale, under penalty of an unrecorded sale being void as against existing creditors of the vendor. The regulation as to what sales shall be made in writing and recorded is plainly a legislative power. The Act did not affect the property of the vendor nor restrict his freedom of action in his selling that property, and the penalty imposed for its disobedience, in view of the actual or constructive fraud against creditors, possible to be more easily accomplished through such sale if not in writing and immediately recorded, was sufficiently appropriate to the legitimate purpose of the regulation to make its wisdom and justness a purely legislative and not a judicial question. We therefore held that the Act was not unconstitutional. *Walp* v. *Mooar*, 76 Conn. 515, 521, 57 Atl. 277.

. The Act of 1903, read in connection with its amendment by chapter 211 of the Public Acts of 1905, requires every retail dealer, before making a sale of his stock in trade, to come to an agreement with his vendee as to all the conditions of the sale; to state these conditions in writing, together with a description of the property to be sold and the parties to the sale; and to cause this writing, signed by him, to be recorded at least seven days previous to making such sale, under penalty, in case of disobedience, of the sale being void as against existing creditors.

Do these limitations upon the owner's right to sell his property necessarily involve a substantial impairment of the value of that property? If they do, then the Act takes private property without compensation, and it is immaterial under what form of words or pretense the result is accomplished. "The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority." *Mugler* v. *Kansas*, 123 U. S. 623, 661, 8 Sup. Ct. Rep. 273. The validity of the Act of 1903 turns upon the answer to this question. If the limitations upon sale involve no substantial impairment of the value of the owner's property, then the justification of the incidental annoyance to the owner may be regarded as a legislative rather than a judicial question; but if the necessary effect of the Act is destruction of private property without compensation, then the principles of the law applicable to such a case involve the invalidity of the Act. As to these principles there is little if any controversy. They are settled by our own decisions in accordance with the weight of authority in other jurisdictions. The protection of the citizen in the equal enjoyment of personal freedom and private property are secured by our Constitution in terms as broad as those which vest the legislative power in the General Assembly. The power to destroy or substantially impair these rights is not included in the grant of legisla-

tive power, and a law purporting to be the exercise of legislative power, whether of the power of taxation, or of trade regulation, or of protective legislation (often called police power), or of any other legislative power, is void if in effect it is a substantial impairment of those rights secured by the Constitution against the operation of every manifestation of legislative power. *State* v. *Conlon*, 65 Conn. 478, 489, 33 Atl. 519; *State* v. *Travelers Ins. Co.*, 73 Conn. 255, 265, 47 Atl. 299; *McKeon* v. *New York, N. H. & H. R. Co.*, 75 Conn. 343, 347, 53 Atl. 656; *State* v. *McMahon*, 76 Conn. 97, 102, 55 Atl. 591; *State* v. *Feingold*, 77 Conn. 326, 331, 59 Atl. 211.

In *State* v. *Travelers Ins. Co.*, 73 Conn. 255, 265, 47 Atl. 299, we say: "The legislative power in all its manifestations is limited. . . . If any exaction . . . in the form of taxation . . . is a seizure of the property of one for the benefit of another, or is an uncompensated confiscation of property, the law authorizing such exaction" violates the Constitution and is void.

In *McKeon* v. *New York, N. H. & H. R. Co.*, 75 Conn. 343, 347, 53 Atl. 656, we say that a law authorizing acts which in effect constitute the taking of property without compensation is void, notwithstanding such acts are authorized in the exercise of the police power; that the phrase "police power" does not denote some transcendant form of legislative authority, but that the police powers of a State are simply the powers of government inherent in every sovereignty, and if exercised by legislation which violates any right guaranteed by the State Constitution they are to that extent invalid; and that "the legislation on which the defendant relies in the case at bar makes no direct provision for compensation for property taken. The Constitution does; and that is enough."

In *State* v. *McMahon*, 76 Conn. 97, 102, 55 Atl. 591, we say: Legislation is not exempt from constitutional guaranties because it relates to subjects commonly classed under the phrase "police power." The whole legislative power is committed to the General Assembly subject to the con-

stitutional restrictions, and no manifestation of that power is exempt from these limitations. A law which takes private property without compensation is equally void, whether classed as an exercise of educational power in building a schoolhouse, or of police power in the destruction of property dangerous to health. "Clothing infected with disease may be destroyed without compensation to its owner, not because the law authorizing it is a police regulation and so exempt from constitutional limitation, but because no right of property is invaded by such destruction." No law can authorize the taking of property without compensation, either for private or public use, because such legislation is outside the field of legislation included in the grant of legislative power of any nature. But the rights of property thus protected do not include a right to the possession or use of anything which is either in itself, or a particular use, inherently dangerous to others. The power to protect its citizens from such dangers is included in the grant of legislative power, and when anything which may be the subject of private ownership thus becomes dangerous, menacing the health, peace, or morals of the public, the legislature may authorize unlimited restrictions in its use, or even the destruction of the thing itself without compensation, and the law may be within the constitutional limits of this power of protective legislation, because the thing destroyed, when thus dangerous to the public, ceases to that extent to be the subject of ownership, and its destruction is not the taking of property but the destruction of a thing which no man has a right to own. The loose phrase "police power" is sometimes limited to this particular exercise of the power of protective legislation in respect to things which, by reason of their danger to the public, have to that extent ceased to be the lawful subject of private ownership; but more frequently its use covers as well the power of trade regulations and all regulations appropriate to promote public quiet, comfort and prosperity. Referring to such regulations we say, in *State* v. *Reynolds,* 77 Conn. 131, 134, 58 Atl. 755: "Every citizen

holds his rights subject to the exercise, within constitu-
tional limits, of this power." Among the constitutional
limits are those provisions which except from the grant of
all legislative power the power to take property without
compensation. The legislature has full power in promo-
tion of general public interests to enact laws regulating
the use of property which do not substantially affect the
protected rights of property and person; it has the power
to regulate the use of, and even to destroy, anything which
may be the subject of ownership and which has become a
menacing danger to the public; each kind of regulation is
an exercise of that legislative power often called police
power, but the principles by which the two kinds of regu-
lation must be governed are very different.

In the former case the controlling question relates to the
wisdom and justice of the regulation, and this is a legisla-
tive question; in the latter, the question is, has the pro-
tected right of property been lost by reason of the inherent
danger to the public of the thing owned, and this is a
judicial question. The distinction is vital. The efficacy
of any limitation of legislative power in respect to prop-
erty rights protected by the Constitution, depends upon
the conception and maintenance of this distinction. Such
limitation must inevitably become a mockery if the courts
hesitate to determine in each case as a purely judicial
question whether or not the protected right of property
exists. In determining this judicial question the courts
ordinarily follow the legislative finding as to the dangerous
nature of the property, but not when they are satisfied
that there exists no reason for such a finding. For in-
stance, when the legislature finds that the liquor distilled
from wheat is a menacing danger to public peace and
morals which deprives the owner of any absolute right to
sell such property and thereupon prohibits its sale, the
courts accept the finding even if there may be room for
some difference of opinion. But should the legislature
find that wheat from which the dangerous liquor may be
distilled is a menacing danger to public order and there-

upon prohibit its sale, it will hardly be contended that the strongest desire to maintain the validity of a legislative Act could justify the court in accepting the finding and declaring the legislation valid. No more can it be seriously contended that the stock in trade of all retail dealers, whether used for sale in small quantities or in bulk, is in its nature such a menacing danger to the public that the owner has no right of property in such a dangerous use, so that a law destroying the stock in trade or substantially impairing its value does not appropriate property without compensation.

If, therefore, the restrictions of the Act of 1903 do substantially impair the value of the property affected, there is no serious question as to its invalidity. Acts imposing somewhat similar restrictions and apparently intended to accomplish a similar purpose were in the same year (1903), through a strange coincidence, enacted by the legislatures of a large number of States. The courts of New York, Ohio and Utah have held such legislation invalid. *Wright* v. *Hart*, 182 N. Y. 330, 75 N. E. 404; *Miller* v. *Crawford*, 70 Ohio St. 207, 71 N. E. 631; *Block* v. *Schwartz*, 27 Utah, 387, 76 Pac. 22. The courts of Massachusetts, Tennessee and Washington have supported their validity. *Squire & Co.* v. *Tellier*, 185 Mass. 18, 69 N. E. 312; *Neas* v. *Borches*, 109 Tenn. 398, 71 S. W. 50; *McDaniels* v. *Connelly Shoe Co.*, 30 Wash. 549, 71 Pac. 37.

In this class of cases the primary question is, Does the law in its necessary practical effect appropriate property not dangerous to the public either inherently or in its particular use? This question determined, the application of the settled principles defining the limitation of legislative power is comparatively simple. As was said in *State* v. *Feingold*, 77 Conn. 326, 333, 59 Atl. 211: "In drawing the line which separates the field of arbitrary interference with protected rights of property and freedom in personal action, from that of protective legislation in behalf of public safety, each case must fall on one or the other side in accordance with its particular circumstances." The Act of

1903 prohibits all retail dealers from selling their property which is palpably not dangerous to public safety either inherently or in its particular use, without complying with certain antecedent requirements. Applying the rule of common sense to the commonly known conditions of trade, it seems to me that the necessary practical effect of these requirements is a substantial impairment of the value of the property affected, and for this reason (without reference to the question whether the Act also violates that equality under the law in the enjoyment of civil rights which is guaranteed by our Constitution) I am unable to concur in the decision of the court.