Johnson, J.
The constitutionality of the statute referred to is the sole question involved in the case. The courts below entertained the view that the question was determined by the cases of Miller et al. v. Crawford et al., 70 Ohio St., 207, and The Williams & Thomas Co. v. Preslo, 84 Ohio St., 328, notwithstanding the subsequent amendment to Section 2 of Article XIII of the Constitution. In those cases it was held that previous acts of the legislature, similar to that in question here, were unconstitutional. In the former case it was decided that the act of April 4, 1902 (95 O. L., 96), to prevent fraud in the purchase, disposition or sale of merchandise, was repugnant to the first article of the constitution, because it placed an unwarrantable restriction upon the right of the individual to acquire and possess property, and because it contained a forbidden discrimination in favor of a limited class of creditors. The court in the opinion points out a number of onerous and restrictive features of the statute, and its analysis is concluded with the statement that “This act, under the guise of preventing fraud in *119 such sales, prohibits them altogether, and thus places upon the enjoyment of property an important restriction which no public interest requires and which the constitution therefore forbids.”
In The Williams & Thomas Co. v. Preslo, supra, it was held that the act of April 30, 1908 (99 O. L., 241), to render presumptively fraudulent sales in bulk of stocks of merchandise, unless the seller should, not less than seven days before the transfer, file with the recorder of the county a notice of his intention to make such sale, was repugnant to the first article of the constitution.
The provisions of the statute which is attacked here are less burdensome than the act of 1902, the things now required with respect to the sale of an entire stock of merchandise, other than in the ordinary course of trade, being that the purchaser shall demand and the seller furnish, under oath, a complete and accurate list of his creditors and of the amounts owing to each, and that the buyer shall, at least five days before the completion of the sale, notify each of the creditors and any others of whom he may have knowledge, personally or by registered mail, of the proposed sale and of the price, terms and conditions thereof.
While it is pointed out by counsel that the act in question here is free from many of the objectionable features which were included in the original act, it is conceded that the application of the rules declared in the two cases above referred to, if unmodified by constitutional amendment or by this court, would require the affirmance of the judgments below in this case.
*120 The contention of the plaintiff in error is that such a modification has been intentionally and deliberately provided in the amendment to Section 2 of Article XIII of the Constitution as adopted in September, 1912. That amendment reads as follows : “Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed. Corporations may be classified and there may be conferred upon proper boards, commissions or officers, such supervisory and regulatory powers over their organization, business and issue and sale of stocks and securities, and over the business and sale of the stocks and securities of foreign corporations and joint stock companies in this state, as may be prescribed by law. Laws may be passed regulating the sale and conveyance of other personal property, whether owned by a corporation, joint stock company or individual.”
The courts below held that this amendment did not enlarge the power of the legislature in the respects claimed for it. In the consideration of it, it is the sole duty of the court to ascertain and give effect to the intention of the people in adopting it, and in the effort to promote the object of the people, rules which are purely technical should not be permitted to thwart the attainment of that object.
An amendment should be viewed in connection with the previously existing constitution and the evils and conditions which led to the change.
Moreover, effect should be given to every part of the instrument as amended, and in the absence of a clear reason to the contrary no portion of a written constitution should be regarded as superfluous. *121 The addition or change should be considered as having been made for some purpose. This is especially true where the amendment includes a granted power.
This amendment was adopted in the year following that in which the latter of the two above-•named cases was decided.
It is a matter of common knowledge that the' business of retail merchandising is conducted largely upon credit. This system has come about as a natural outgrowth of the vast increase in the facilities of transportation and communication in modern times. It was not surprising that a system, so built up and conducted, should be attended with abuses, for it furnished an opportunity for the commission of frauds upon creditors not usual in other forms of business. There was a temptation to sell stocks in bulk without providing for the payment of creditors from whom they were bought. It was natural and inevitable that such an important subject should be called to the attention of the legislatures and courts. Almost every state in the Union now has a statute similar to the one involved in this case. There has been the same desire for substantial uniformity that has been shown with reference to the legislation in the different states on all the different branches and phases of commercial law — negotiable instruments, bills of sale, bills of lading, etc. The fact that there has been this general and concerted action is no reflection against the wisdom or validity of the legislation itself.
In the light of these suggestions, and guided by *122 the fundamental principles above referred to, what must be said as to the intention of the framers of the amendment in question and.of the people in adopting it? Was it merely declaratory of powers already possessed by the legislature or was it intended to meet new conditions ?
Counsel for plaintiff in error call attention to the proceedings of the constitutional convention which framed the amendment involved here in support of their view as to its purpose and effect.
The debates of a convention cannot have conclusive effect in the construction of the provisions of a constitution. Yet they are not without importance where they tend to support a construction indicated by the language of an amendment; and they may show what was the mischief which was intended to be prevented under the new order by the adoption of the amendment. 6 Rul. Cas. L., 68; The State, ex rel., v. Foraker, 46 Ohio St., 677, 690. Cooley Constitutional Limitations (7 ed.), p. 101.
As stated by Judge Thurman in Cass v. Dillon, 2 Ohio St., 607, 621: “Although the debates of the convention can never overthrow a plain, unambiguous provision of the constitution * * * yet they certainly may fortify us in following the natural import of its language, and legitimately aid in removing doubts.”
It is said in 11 Modern American Law, p. 77: “If the proceedings of the convention clearly indicate the purpose of a particular provision great weight may properly be attached to them.”
A reading of the Constitutional Debates, Vol. 2, *123 p. 1205 et seq., discloses that this amendment was discussed by able members of the convention. Its purpose was fully and clearly explained. Reference was made to the previous statutes which forbade one who was conducting an ordinary mercantile business from selling out in bulk without notice to creditors, as well as to the decisions of this court touching the subject. It was generally understood that the proposed amendment, in the words of a leading member, “has met that condition which the supreme court of Ohio has declared to exist and unfetters the legislature so that it can proceed to pass this needed legislation.” The record of the proceedings shows that the only question made related to the article of the constitution in which the amendment should be included.
It was finally added to the amendment to Section 2, Article XIII, which had been agreed on.
It will be observed that the first part of the amendment to that article authorizes the classification of corporations and the regulation of their organization, business, and issue and sale of stocks, and of the “business and sale of the stocks and securities of foreign corporations and joint stock companies in this state.” Then follows the second part, the additional clause: “Laws may be passed regulating the sale and conveyance of other personal property, whether owned by a corporation, joint stock company or individual.”
When construed in connection with the guaranties of the bill of rights, it is clear that it was intended by this amendment to confer power on the legislature to modify those guaranties, in so far *124 as the right of contract for the sale of personal property is concerned, by the passage of the regulating laws authorized by it.
But it is contended that even if this be true there still remains the other objection, that this statute discriminates in favor of a limited class of creditors and offends the constitutional requirements of uniformity.
As to this, it must be noted that the amendment deals with, and its dominant note is, classification of the various forms of personal property and the regulation of the sale thereof.
Having concluded that the bill of rights and this amendment must be construed together, and that by the general terms of the latter authority has been conferred to qualify and regulate the exercise of the rights guaranteed by the former, so far as the right to contract for the sale of personal property is concerned, the considerations suggested later on as the objection that the statute attacked violates the Fourteenth Amendment to the Federal Constitution are equally applicable to the objections as to classification and lack of uniformity which are based on the Ohio constitution.
We do not think that the act in question violates the Fourteenth Amendment to the Federal Constitution. That amendment provides that “No state shall * * * deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
The right to contract is part of the liberty of the citizen. It is within the protection of this amend *125 ment and cannot be arbitrarily interfered with, yet nothing is more firmly settled than that the right to contract is not absolute and unyielding, but is subject to limitation and restraint in’ the interests of the public health, safety and welfare,, and these limitations may be fixed by the legislature.
In Frisbie v. United States, 157 U. S., 160, it is said: “While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of the liberty of contract, yet such liberty is not absolute and universal. It is within the undoubted power of the government to restrain some individuals from all contracts, as well as all individuals from some contracts.”
And in the very recent case of Erie Rd. Co. v. Williams, 233 U. S., 685, it was declared: “But liberty of making contracts is subject to conditions in the interest of the public welfare, and which shall prevail — principle or condition — cannot be defined by any precise and universal formula. Each instance of asserted conflict must be determined by itself, and it has been said many times that each act of legislation has the support of the presumption that it is an exercise in the interest of the public. The burden is on him who attacks the legislation, and it is not sustained by declaring a liberty of contract. * * * The legislature is, in the first instance, the judge of what is necessary for the public welfare, and a judicial review of its judgment is limited. The earnest conflict of serious opinion does not suffice to bring it within the range of judicial cognizance.”
An eminent authority, everywhere respected, *126 says: “They [the courts] must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the legislature when the act was passed; and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding.” Cooley Constitutional Limitations (7 ed.), 257.
The guaranties of Sections 1, 2 and 19 of the Bill of Rights in the Constitution of Ohio are similar to those contained in the amendment to the federal constitution referred to.
In the construction of these provisions this court has been in harmony with the principles above announced. In The State, ex rel. Monnett, v. The Buckeye Pipe Line Co., 61 Ohio St., 520, which involved the constitutionality of the Ohio antitrust law, Judge Shauck said, in announcing the opinion of the court: “The definite proposition of counsel upon this point is that although the act is an exercise of legislative power, it transcends the provisions of the state and federal constitutions which render inviolable the rights of liberty and property, which include the right to make contracts. It would be difficult to place too high an estimate ppon these guaranties, and they include the right to make contracts. But it is settled that these guaranties are themselves limited by the public welfare or the exercise of the police power.”
In Bloomfield v. State, 86 Ohio St., 253, 264, it is said: “The state is' necessarily invested with *127 that which is called the police power, which will be, and should be, put forth as an expression of the popular conception of the necessities of social and economic conditions. Under it may be done, and should be done, that which will, best secure the peace, morals, health and safety of' the community. * * * The fourteenth amendment was not designed to prevent all exercise of judgment by a state legislature, of what the interests of the state require, nor to compel it to run all of its laws in the channels of general legislation. Bachtel v. Wilson, 204 U. S., 36; St. John v. New York, 201 U. S., 633.”
The authorities agree that a statute is general and uniform if it operates equally upon every person and locality within the circumstances covered by the act, and when a classification has a reasonable basis it is not invalid merely because not made with exactness or because in practice it may result in some inequality. Lindsley v. Natural Carbonic Gas Co., 220 U. S., 61; Porter et al., Trustees, v. Hopkins, Treas., 91 Ohio St., 83.
We think it clear that • there are substantial reasons for the classification made by this statute. It applies equally to all merchants having a stock of merchandise for sale in the usual course of trade, who have creditors. It operates upon such class when there is contemplated a bulk sale of the stock otherwise than in the ordinary course of trade. It relates to all purchasers. It affects all within the class of creditors of such merchants. The necessary results of its operation would be in the interest *128 of honest merchants and of the public welfare, for these are concerned in the prevention of frauds and in the protection of public morals.
No reason has been suggested for the extension of the requirements included in the statute under consideration to the owners and purchasers of all personal property. To do so would unnecessarily and unreasonably hinder many transactions which are free from the inherent dangers and mischief intended to be corrected.
We are the more firmly convinced of the soundness of the conclusion which we have indicated by the fact that the constitutionality of legislation in all essentials similar has been expressly upheld by the supreme court of the United States and in many of the states, among which are Connecticut, Georgia, Indiana, Illinois, Massachusetts, Michigan, Minnesota, Oklahoma, Pennsylvania and Washington. In many other states similar statutes have been construed and enforced, and their validity thus indirectly sustained.
In Kidd, Dater & Price Co. v. Musselman Grocer Co., 217 U. S., 461, it was held: “It is within the police power of the state to require tradesmen making sales in bulk of their stock in trade to give notice to their creditors and also to prescribe how such notice shall be given, and unless the provisions as to such notice are unreasonable and arbitrary a statute to that effect does not amount to deprivation of property, abridge liberty of contract or deny equal protection of the law within the meaning of the Fourteenth Amendment; nor is the requirement in the Michigan sales-in- *129 bulk act of 1905 that such notice be either personal or by registered mail unreasonable or arbitrary.” The Ohio statute involved in this litigation is substantially a copy of the Michigan law under consideration in that case.
In Young, Trustee, v. Lemieux, 79 Conn., 434, it is said: “Insolvent and fraudulent vendors are those who will be chiefly affected by the act, and it is for the protection of creditors against sales by them of their entire stock at a single transaction and not in the regular course of business, that its provisions are aimed. It is of course possible that an honest and solvent retail dealer might, in consequence of the required notice before the sale, lose an opportunity of selling his business, or suffer some loss from the delay of a sale occasioned by the giving of such notice. But a ‘possible application to extreme cases’ is not the test of the reasonableness of public rules and regulations. Commonwealth v. Plaisted, 148 Mass., 375, 382.”
These holdings are in harmony with the view that our constitutions were made in the contemplation that new necessities would arise with changing conditions of society.
We are convinced that it was in this spirit and in the light of the experiences in the business world which we have pointed out that the amendment to Section 2 of Article XIII was framed and adopted; that the effect of the amendment was to clothe the legislature with a larger power to deal with the subject referred to, and that the act here involved does not conflict with any of the. provisions of the constitution.
*130 The judgment will be reversed and the cause remanded to the court of common pleas for further proceedings according to law.

Judgment reversed.

Nichols, C. J.; Donai-iue and Wanamaker, JJ., concur.
Newman, Jones and Matthias, JJ., dissent.